PEOPLE v FIELDS

Docket No. 44492. Submitted June 2, 1980, at Lansing.—Decided November 4, 1980. Leave to appeal applied for.

Elizabeth J. Fields was convicted of enticing away children under the age of 14 in Jackson Circuit Court, Russell E. Noble, J. While the defendant's late husband, Sherman Fields, was in prison, the defendant's four children were adjudicated to be neglected and made temporary wards of the juvenile division of probate court. Subsequent to Mr. Fields' release from prison, the juvenile court issued an order to show cause why the Fieldses' parental rights should not be permanently terminated. Subsequent to a supervised visit with their children, the Fieldses followed the social worker's automobile while the worker was returning the children to their placement homes. When the social worker stopped at a store en route, the Fieldses parked their automobile behind the social worker's car and removed the children. Defendant appeals, alleging that the statute under which she was convicted is only applicable to natural parents when the child has been adopted or parental rights have been otherwise permanently terminated. *Held:*

1. Principles of statutory construction support the position that natural parents are properly charged with kidnapping their children only when the children have been legally adopted.

2. Generally, statutory construction involves a three-stage analysis: 1) an examination of the actual language of each clause; 2) consideration for the words or expressions obviously purposefully omitted; and 3) the connection between clauses within the statute and the conclusions that may be drawn by comparison.

3. If the statute prohibiting the enticing away of children under the age of 14 should be expanded to cover the taking of children by the natural parents in other than the adoption

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 17.
　73 Am Jur 2d, Statutes § 293.
[2, 3] 73 Am Jur 2d, Statutes §§ 142, 196.
[4, 5] 1 Am Jur 2d, Abduction and Kidnapping § 19.

setting, such expansion should reasonably include only those cases where parental rights have been similarly severed.

4. The statute prohibiting the interfering with legal custody of dependent, neglected, and delinquent children, although not specifically mentioning the parent-child relationship, is clearly intended to cover the situation in which an adjudication of neglect resulted in temporary custody in foster homes as an interim measure pending a determination with respect to permanent termination of parental rights, is limited by its language to children who have been adjudged dependent, neglected, or delinquent and applies regardless of the temporary or permanent characterization of the court-ordered custodial arrangement.

Reversed.

1. Statutes — Criminal Law — Statutory Construction.
Criminal statutes are to be strictly construed.

2. Statutes — Statutory Construction — Analysis.
Generally, statutory construction involves a three-stage analysis: 1) an examination of the actual language of each clause, 2) consideration for the words or expressions obviously purposefully omitted, and 3) the connection between clauses within the statute and the conclusions that may be drawn by comparison.

3. Statutes — Statutory Construction.
It is an elementary rule of construction that effect should be given to each word, sentence, and clause of a statute when possible so that no portion is rendered inoperative or superfluous and the act should be construed as a consistent whole but if that cannot be reasonably done, the most harmonious construction should prevail.

4. Kidnapping — Statutory Construction — Natural Parents.
Expansion of the statute prohibiting the enticing away of children under the age of 14 to apply to natural parents should reasonably include only those cases where parental rights have been severed in a way similar to adoption (MCL 750.350; MSA 28.582).

5. Parent and Child — Statutes — Custody Interference.
The statute prohibiting the interfering with legal custody of dependent, neglected and delinquent children, although not specifically mentioning the parent-child relationship, is clearly intended to cover the situation in which an adjudication of neglect resulted in temporary custody in foster homes as an

interim measure pending a final determination of parental rights, is limited in application to children who have been adjudged dependent, neglected or delinquent, and applies regardless of the temporary or permanent characterization of the court-ordered custodial arrangement (MCL 750.138; MSA 28.333).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Chief Appellate Attorney, for the people.

*Susan J. Smith,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

M. J. KELLY, J. Following a jury trial, defendant was convicted of enticing away children under the age of 14, contrary to MCL 750.350; MSA 28.582. On January 18, 1979, defendant was sentenced to 2-1/2 to 10 years imprisonment with credit for 79 days previously served in jail. On November 16, 1979, this Court entered an order permitting the defendant bail pending this appeal as of right.

While defendant's late husband, Sherman Fields, was in prison, their four children were adjudicated neglected and made temporary wards of the juvenile division of probate court. Following Mr. Fields' release from prison, both parents attended a juvenile court review hearing at which time the court issued an order to show cause why their parental rights should not be permanently terminated, a hearing on the order to be held at a later date. On the same day, following a supervised visit between parents and children, defendant and her husband followed the social worker's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

car as she was returning the four children to their placements. When the social worker stopped at a store en route, the Fields pulled up behind the car and removed the children. After a high speed chase by the police they were apprehended and subsequently charged with kidnapping in violation of MCL 750.350; MSA 28.582, which provides:

"Any person who shall maliciously, forcibly or fraudulently lead, take or carry away, or decoy or entice away, any child under the age of 14 years, with intent to detain or conceal such child from its parent or guardian, or from the person or persons who have lawfully adopted said child or from any person having the lawful charge of said child, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years. *In case such child shall have been adopted* by a person or persons other than its parents, in accordance with the statute providing for such adoption, *then this section shall apply as well to such taking,* carrying, decoying, or enticing away of such child, *by its father or mother, as by any other person."* (Emphasis added.)

Defendant maintains that the above statute is applicable to natural parents only when the child has been adopted or parental rights have been otherwise permanently terminated. Plaintiff responds by urging us to consider the fact that at the time of the enactment of the statute adoption was the *only* legally recognized custodial arrangement involving a minor child vesting custodial rights superior to those of the natural parent in a third party; the probate court did not have the power or jurisdiction to enter an order such as issued in the present case when the criminal statute was originally enacted. Accepting the accuracy of this historical perspective, we disagree with the people's conclusion that the statute's application

should currently be judicially extended to include the instant factual situation.

First, we agree with defendant that principles of statutory construction support her position that according to the language of the statute, natural parents are properly charged with kidnapping their children only when the children have been legally adopted. It is a firmly established rule that criminal statutes are to be strictly construed. Generally, statutory construction involves a three-stage analysis: (1) an examination of the actual language of each clause; (2) consideration for the words or expressions obviously purposefully omitted; and (3) the connection between clauses within the statute and the conclusions that may be drawn by comparison. Sutherland, Statutory Construction (3d ed), § 46.05, p 56. The act should be construed as a consistent whole, but if that cannot be reasonably done, the most harmonious construction should prevail. *Sutherland, supra.* It is also an elementary rule of construction that effect should be given to each word, sentence and clause of a statute when possible so that no portion is rendered inoperative or superfluous. *Sutherland, supra,* § 46.06, p 63.

Application of these principles to the statute in question convinces us of the correctness of defendant's analysis. If natural parents were intended to be included within the more general prohibition of the introductory sentence, the specific reference to the conduct of natural parents in the context of adopted children would have been unnecessary and superfluous. The logical conclusion to be drawn, based upon a comparison of both sentences, is that only the latter is applicable to the parent-child relationship.

Plaintiff contends that a legislative intent to

exclude parents from kidnapping charges under the statute, in cases other than abduction of adopted children, should be manifest in a specific exclusionary clause as contained in other state and Federal legislation. *E.g.,* Maine Rev Stat Ann § 2051,[1] 18 USC 1201. This position runs contrary to the people's earlier suggestion that the statute be construed in light of the fact that at the time of enactment only adoption vested superior custodial rights in a party other than a natural parent, and therefore the statute refers to kidnapping by parents only in the context of children given up for adoption.

If the statute's application should be expanded to cover the taking of children by natural parents in other than the adoption setting, such expansion should reasonably include only those cases where parental rights have been similarly severed.

We disagree with the people's position that it is the very existence of a court order rather than the temporary or permanent nature of the order which determines whether a kidnapping has in fact occurred. There is a crucial difference between a parent who has temporarily lost custody of a child and one who has permanently lost parental rights. A parent whose rights remain undecided at the time of the taking may not have any right to custody, but we are of the opinion that temporary loss of physical possession of the child is not the proper basis for decision. If application of the statute is to extend beyond parental taking of an adopted child, such taking following *permanent* loss of parental rights or custody is most closely akin to the conduct actually prohibited by the language. Both parties rely heavily on cases in-

---

[1] Since repealed by 1975 Me Acts, C 499, § 11; Me Rev Stat tit 17-A, §§ 301-303.

volving court ordered custody pursuant to divorce proceedings which are of limited value here except to point out that the parent who does not have physical possession of the child cannot be charged with kidnapping absent a final award of custody. *E.g., Adams v State,* 218 Ga 130; 126 SE2d 624 (1962), *Cf., People v Nelson,* 322 Mich 262; 33 NW2d 786 (1948).

"On the question presented, there has been no loss of parental control by the father but there has been an award of temporary custody to the mother pending divorce proceedings. We do not believe that under the laws of this state an award of temporary custody to the other * * * would be such a decree of court as would serve as the basis for conviction of the father of kidnapping his own child from the mother. A decree awarding temporary custody is a matter of discretion with the court. It is not an adjudication of the rights of the parties * * *. The parental rights of the parties are not adjudicated by the award of temporary custody. A temporary award of custody differs from a permanent award as the latter is a final adjudication of the rights of the parties on the existing facts, is res judicata * * *. No such finality exists as to a judgment awarding temporary custody." *Adams, supra,* 625-626.

We conclude that principles of statutory construction and relevant case law militate against defendant's conviction under MCL 750.350; MSA 28.582 based strictly on the above contained analysis. Moreover, subsequent legislation obviously tailored to meet the growing number of custodial arrangements brought about by probate court jurisdiction further convinces us that MCL 750.350; MSA 28.582, is not controlling here. MCL 750.138; MSA 28.333, dealing with interfering with legal custody of dependent, neglected and delinquent children, provides in part:

*"Any person who shall in any manner interfere or attempt to interfere with the custody of any dependent, neglected or delinquent child who has been adjudged to be such \* \* \* subsequently to the making of an order of* commitment to a state institution or otherwise \* \* \* *and any person who shall entice such neglected, dependent or delinquent child from and out of the custody of the person or persons entitled thereto* under order of the court *or who shall in any way interfere* or attempt to interfere *with such custody \* \* \* shall be guilty of a misdemeanor,* punishable by imprisonment in the county jail not more than 1 year, or by fine of not more than 500 dollars." (Emphasis added.)

Although the above statute does not specifically mention the parent-child relationship, it is clearly intended to cover the instant situation in which an adjudication of neglect resulted in temporary custody in foster homes as an interim measure pending a determination with respect to permanent termination of parental rights. See *People v Bol,* 23 Mich App 244; 178 NW2d 516 (1970). This particular statute, by its language limited in application to children who have been adjudged dependent, neglected or delinquent, has been held to apply regardless of the temporary or permanent characterization of the court ordered custodial arrangement. *Bol, supra.* The people's attempt to circumvent the obvious applicability of MCL 750.138; MSA 28.333 to the instant case by claiming that this was a forcible taking is without merit. But the people failed to offer factual substantiation of the element of force, and this statute omits any reference to force or consent because the state of mind of the child is immaterial to the offense.

Due to the above disposition, remaining errors claimed by defendant need not be addressed.

Reversed.