PECORARO v ROSTAGNO-WALLAT

Docket Nos. 293355 and 293445. Submitted August 6, 2010, at Detroit.
Decided January 18, 2011, at 9:00 a.m.

Anthony S. Pecoraro filed a complaint for paternity in the Wayne
Circuit Court against Gina Rostagno-Wallat, seeking to enforce an
order of filiation he had obtained in the state of New York that
named him as the biological father of a child born to Rostagno-
Wallat in 2002. The New York proceedings had taken place despite
the court's inability to exercise jurisdiction over Rostagno-Wallat's
husband, Jeffrey C. Wallat. In response to Pecoraro's complaint,
Wallat, who had been Rostagno-Wallat's husband since 1994, filed
a declaratory action in the same court against Pecoraro and
Rostagno-Wallat, seeking a determination that he was the legal
father of the child. The suits were consolidated and the parties
moved for summary disposition. The court, Richard B. Halloran,
Jr., concluded that the New York decision gave Pecoraro standing
to file a paternity suit and established his paternity of the child.
Wallat and Rostagno-Wallat appealed, and the appeals were con-
solidated.

The Court of Appeals *held*:

1. Under the Paternity Act, MCL 722.11 *et seq.*, when a child is
born to a married woman, her husband is presumed to be the legal
father. A putative father of that child has standing to bring suit
only if the court has determined that the child is not the issue of
that marriage. Such a determination must be an affirmative
finding by the court regarding the child's paternity in a prior legal
proceeding that settled the controversy between the mother and
the legal father. The New York action was not a proceeding
between Rostagno-Wallat, the mother, and Wallat, the legal father,
and it did not satisfy the Paternity Act's requirements because it
did not settle the controversy between the mother and the legal
father. Therefore, the trial court erred in concluding that Pecoraro
had standing to file the suit.

2. Whether a putative father would be considered a natural or
biological parent under the Child Custody Act is irrelevant unless
he can first establish paternity under Michigan's Paternity Act.
Without standing under the Paternity Act, the putative father

must be considered a nonparent under the Child Custody Act and his child custody claim is barred.

3. Under the Full Faith and Credit Clause of the United States Constitution, a foreign judgment is conclusive and must be recognized if jurisdiction has been obtained over the parties and the subject matter. However, the courts of this state are not obliged under the federal Constitution to give a foreign judgment full faith and credit where the issuing court lacked jurisdiction over the subject matter or the parties, and a valid judgment affecting a nonresident's rights or interests may only be entered by a court having personal jurisdiction over that defendant. The New York court lacked personal jurisdiction over Wallat, a necessary party. Wallat was not required to choose between submitting to the jurisdiction of the New York court or placing his rights at risk, and Rostagno-Wallat's interest in the matter was not identical with his. The court was not obliged to give the New York order of filiation full faith and credit.

Reversed.

1. PARENT AND CHILD — LEGITIMACY PRESUMPTION — REBUTTAL.

Under the Paternity Act, when a child is born to a married woman, her husband is presumed to be the legal father; a putative father of that child has standing to bring suit only if the court has determined that the child is not the issue of that marriage; such a determination must be an affirmative finding by the court regarding the child's paternity in a prior legal proceeding that settled the controversy between the mother and the legal father (MCL 722.711[a], MCL 722.714).

2. PARENT AND CHILD — LEGITIMACY PRESUMPTION — REBUTTAL.

Whether a putative father would be considered a natural or biological parent under the Child Custody Act is irrelevant unless he can first establish paternity under Michigan's Paternity Act; without standing under the Paternity Act, the putative father must be considered a nonparent under the Child Custody Act, and his child custody claim is barred.

3. CONSTITUTIONAL LAW — FULL FAITH AND CREDIT CLAUSE — FOREIGN JUDG-
MENTS — PERSONAL JURISDICTION.

Under the Full Faith and Credit Clause of the United States Constitution, a foreign judgment is conclusive and must be recognized if jurisdiction has been obtained over the parties and the subject matter; however, the courts of this state are not obliged under the federal constitution to give a foreign judgment full faith

and credit when the issuing court lacked jurisdiction over the subject matter or the parties, and a valid judgment affecting a nonresident's rights or interests may only be entered by a court having personal jurisdiction over that defendant (US Const, art IV, § 1).

*Law Offices of Jeffery A. Cojocar, P.C.* (by *Jeffery A. Cojocar*), for Anthony S. Pecoraro.

*Anne Argiroff* and *Mekel Miller* for Gina Rostagno-Wallat.

*Judith A. Curtis* and *Kenneth E. Prather* for Jeffrey C. Wallat.

Before: GLEICHER, P.J., and ZAHRA and K. F. KELLY, JJ.

ZAHRA, J. In these consolidated appeals by leave granted,[1] Jeffrey C. Wallat and his spouse, Gina Rostagno-Wallat, (collectively referred to as "the Wallats") appeal an order issued by the Wayne Circuit Court which, among other things, enforces an order of filiation issued by a New York court. The order of filiation declared Anthony Pecoraro to be the father of a child conceived and born to Rostagno-Wallat during her marriage to Wallat. On appeal, we must decide whether Pecoraro has standing to bring suit to establish paternity in Michigan. We must also consider whether the Full Faith and Credit Clause of article IV, § 1 of the United States Constitution requires us to give full force and effect to the order of filiation entered by the New York court.

In Michigan, a child conceived and born during a marriage is legally presumed the legitimate child of that marriage, and the mother's husband is the child's

---

[1] *Pecoraro v Rostagno-Wallat*, unpublished order of the Court of Appeals, entered January 11, 2010 (Docket Nos. 293355 and 293445).

father as a matter of law. A third party may not rebut this legal presumption unless there first exists a judicial determination arising from a proceeding between the husband and the wife that declares the child is not the product of the marriage. Because there was no paternity determination made in legal proceedings involving Wallat and Rostagno-Wallat that established Wallat was not the father of the child, we hold that Pecoraro lacks standing to seek paternity under Michigan's Paternity Act. Further, because the New York court concluded that it lacked personal jurisdiction over Wallat, a necessary party to the paternity proceedings, we hold that the Full Faith and Credit Clause of the United States Constitution does not require us to give effect to the New York order of filiation. We reverse the judgment of the lower court and remand for entry of judgment consistent with this opinion.

## I. BASIC FACTS AND PROCEDURE

The Wallats have been married to each other since June 4, 1994. At all times pertinent to this action, they have resided in Michigan. Two children were conceived and born during their marriage, one was born in 1999 and the other in 2002. The birth certificates of both children identify Jeffrey Wallat as the father.

Rostagno-Wallat and Pecoraro attended law school together in Lansing, Michigan. In June of 1997, their relationship expanded beyond the study of law. An intimate relationship between them continued on an "on-and-off" basis after Pecoraro graduated from law school in 1998 and returned to his home in Buffalo, New York. Rostagno-Wallat informed Pecoraro that he was the biological father of the child born in 2002 (throughout the remainder of this opinion, the child born in 2002 is referred to as "the child"). Deoxyribonucleic acid

(DNA) testing performed in 2002 confirmed that Pecoraro was the biological father of the child. In April 2005, Rostagno-Wallat and Pecoraro permanently ceased their relationship and litigation commenced shortly thereafter.

### A. PECORARO'S PATERNITY ACTION IN NEW YORK

In June 2005, Pecoraro filed a paternity petition against Rostagno-Wallat in New York, seeking an order of filiation establishing himself as the father of the child. Rostagno-Wallat moved to dismiss the paternity action for lack of personal jurisdiction, as neither she nor the child ever had resided in New York. Rostagno-Wallat also argued that dismissal was required because Pecoraro failed to name a necessary party—her husband, Jeffrey Wallat, who also was not subject to the jurisdiction of New York.[2] Finally, Rostagno-Wallat argued that paternity was already established by operation of Michigan law, which presumes that, absent a prior judicial determination to the contrary, all children born of a marriage are the product of the marriage. *Girard v Wagenmaker*, 437 Mich 231, 242-244; 470 NW2d 372 (1991); MCL 722.711(a); MCR 3.903(7).

The New York court denied Rostagno-Wallat's motion to dismiss the paternity petition. The New York court found that it had jurisdiction over Rostagno-Wallat under NY Fam Ct Act § 580-201(6), because she engaged in sexual intercourse in New York and the child may have been conceived by that act. Thereafter, Pecoraro apparently amended his petition to name Wallat as a defendant.

---

[2] New York's Civil Practice Law and Rules, CPLR 1001(a), defines necessary parties as "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants."

Wallat made a special appearance in the New York court to contest the court's jurisdiction over him. Wallat argued the paternity action had to be dismissed because he was a necessary party to the establishment of paternity and he could not be compelled to litigate in New York because New York did not have personal jurisdiction over him. Wallat, like Rostagno-Wallat, argued that the paternity of the child was established pursuant to Michigan law.

The New York court conceded that Wallat was a necessary party to the paternity action and that it did not have any basis to exercise personal jurisdiction over Wallat. The New York court also acknowledged that under Michigan law, paternity was established in Wallat, since he was the spouse of Rostagno-Wallat at the time of conception. Nonetheless, the New York court found that under New York's Civil Practice Law and Rules, CPLR 1001(b), dismissal of the paternity action was not required. This rule provides, in pertinent part, that "[i]f jurisdiction over [a necessary party] can be obtained only by his consent or appearance, the court, when justice requires, may allow the action to proceed without his being made a party."[3] The New York court held that justice required that Pecoraro be permitted to

---

[3] CPLR 1001(b) provides in full:

When joinder excused. When a person who should be joined under subdivision (a) has not been made a party and is subject to the jurisdiction of the court, the court shall order him summoned. If jurisdiction over him can be obtained only by his consent or appearance, the court, when justice requires, may allow the action to proceed without his being made a party. In determining whether to allow the action to proceed, the court shall consider:

1. whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder;

2. the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined;

proceed with the matter even though the court could not obtain jurisdiction over Wallat. Wallat's motion to dismiss for lack of personal jurisdiction was denied.[4]

A trial was held on the issue of paternity. Rostagno-Wallat did not attend the trial and presented no proofs. In April 2007, the New York court issued a decision and order that held Rostagno-Wallat was estopped from denying that Pecoraro was the father of the child. The New York court granted Pecoraro's petition to establish paternity and issued an order of filiation declaring him the father of the child. Thereafter, the New York court dismissed Pecoraro's claim against Wallat for lack of personal jurisdiction. The Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department, subsequently affirmed this order on June 6, 2008, Docket No. CAF 08-00128.

---

3. whether and by whom prejudice might have been avoided or may in the future be avoided;

4. the feasibility of a protective provision by order of the court or in the judgment; and

5. whether an effective judgment may be rendered in the absence of the person who is not joined.

[4] New York's CPLR 1001(b) provides that, under limited circumstances, litigation may proceed without a necessary party over whom the court lacks jurisdiction. We question whether this court rule comports with the minimum requirements of due process. This aside, the rule does not in any way purport to establish a basis for personal jurisdiction over the necessary party where none exists. Thus, it is puzzling that the New York court did grant in part Wallat's motion and dismiss him from the litigation, while continuing litigation between Pecoraro and Rostagno-Wallat. In any event, Wallat was not an active participant to the paternity proceedings and never submitted himself to the jurisdiction of the New York court. After the New York court entered its order of filiation establishing paternity in Pecoraro, it dismissed Pecoraro's claims against Wallat for lack of personal jurisdiction.

B. LEGAL PROCEEDINGS IN MICHIGAN

In January 2006, before the resolution of the paternity action in New York, Wallat filed a paternity action against Rostagno-Wallat in the Wayne Circuit Court. After conducting a hearing with testimony from Wallat and Rostagno-Wallat, the court entered an order dismissing the case because the child was conceived and born during the parties' marriage and thus was not born out of wedlock. The court concluded it lacked jurisdiction to enter an order of filiation "due to paternity already being established."

In February 2008, while the New York proceedings were on appeal, Pecoraro filed in the Wayne Circuit Court a "Complaint for Paternity" against Rostagno-Wallat in which he, among other things, sought enforcement of the New York order of filiation. This complaint alleged that the parties were never married and had one minor child born out of wedlock. In July 2008, Wallat filed a complaint for declaratory judgment against Rostagno-Wallat and Pecoraro. In this action, Wallat sought a determination that he is the legal father of the child. After additional procedural maneuvering by and between the litigants, all parties eventually filed motions for summary disposition. On July 16, 2009, the trial court issued an opinion and order finding in favor of Pecoraro. This appeal followed.

II. ANALYSIS

On appeal, the Wallats argue that the trial court erred by finding that Pecoraro had standing under Michigan's Paternity Act, MCL 722.711 *et seq.* They also argue the trial court erred in concluding that it was constitutionally required to give full faith and credit to the New York order of filiation issued by the New York court. We agree.

### A. STANDARD OF REVIEW

Whether a party has standing to commence an action to establish paternity under the Paternity Act involves a question of law that this Court reviews de novo. *Barnes v Jeudevine*, 475 Mich 696, 702; 718 NW2d 311 (2006). We also review de novo the interpretation of statutes, jurisdictional issues, and constitutional questions. *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 483; 722 NW2d 906 (2006); *Pontiac Food Ctr v Dep't of Community Health*, 282 Mich App 331, 335; 766 NW2d 42 (2009); *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 620; 692 NW2d 388 (2004).

### B. PECORARO LACKS STANDING TO ESTABLISH PATERNITY IN MICHIGAN

Pecoraro argues that he can enforce the New York order of filiation under § 4b of the Paternity Act, which provides that "[t]he establishment of paternity under the law of another state has the same effect and may be used for the same purposes as an acknowledgment of paternity or order of filiation under this act." MCL 722.714b. We find no merit in this argument. Before Pecoraro may assert the provisions of the Paternity Act, he must establish that he has standing under that act.

Standing to pursue relief under the Paternity Act is conferred on "(1) the mother of a child born out of wedlock, (2) the father of a child born out of wedlock, or (3) the Family Independence Agency[5] on behalf of a child born out of wedlock who is being supported in whole or in part by public assistance." *McHone v Sosnowski*, 239 Mich App 674, 677; 609 NW2d 844

---

[5] The Family Independence Agency is now the Department of Human Services.

(2000), citing MCL 722.714(1) and (8). Under the statute, a "child born out of wedlock" is defined as "a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage." MCL 722.711(a); *In re KH*, 469 Mich 621, 631-632; 677 NW2d 800 (2004).

It is undisputed that on the date of conception and at all times pertinent to these proceedings, Rostagno-Wallat has been married to Wallat. Thus, the first method for establishing that the child was born "out of wedlock" cannot be satisfied. The only remaining method of establishing that a child was born "out of wedlock" requires a court's determination that the child is not the issue of the marriage. *Barnes*, 475 Mich at 703-704, citing *Girard*, 437 Mich at 243. In *Barnes*, the Michigan Supreme Court held "that a court determination under MCL 722.711(a) that a child is not 'the issue of the marriage' requires that there be an affirmative finding regarding the child's paternity in a prior legal proceeding that settled the controversy between the mother and the legal father." *Id.* at 705.

Pecoraro maintains that the New York order of filiation constituted a prior court determination that the child was not the issue of defendants' marriage. Although the New York court made this finding, the New York action was not a proceeding between Rostagno-Wallat, the mother, and Wallat, the legal father. Rather, the New York court expressly allowed the action to proceed without having personal jurisdiction over Wallat. Further, because Wallat could not be forced to participate in the proceedings, the New York proceedings clearly did not "settle[] the controversy between the mother and the legal father," satisfying the

Paternity Act. *Barnes*, 475 Mich at 705. Simply put, because Rostagno-Wallat and Wallat have not asked a court to declare that the child was born out of wedlock, Pecoraro lacks standing to claim paternity under Michigan's Paternity Act.

Pecoraro also argues he has standing to assert his claim under the Child Custody Act, MCL 722.21 *et seq.*, which defines "parent" as "the natural or adoptive parent of a child." MCL 722.22(h). This definition was added to the Child Custody Act, which did not previously define the term "parent," by 2004 PA 542. Pecoraro maintains that because he is the child's biological father, he is the natural father, as that term is used the Child Custody Act. Thus, he concludes, he may pursue his claim under the Child Custody Act, which confers on parents standing to seek custody of their children. *Aichele v Hodge*, 259 Mich App 146, 165; 673 NW2d 452 (2003).

Our Supreme Court in *Girard* addressed the interaction between the Paternity Act and the Child Custody Act. *Gerard*, 437 Mich at 251. As in the instant case, the Court in *Girard* held that "a putative father of a child born to a woman married to another man[] did not have standing to contest paternity under the Paternity Act." *Id*. *Girard* further posited that, given this conclusion, the putative father "clearly could not obtain a determination that he was the natural or biological father of the child under the Child Custody Act." *Id*. The *Girard* Court then concluded that, because the putative father "could not obtain a determination that he was a parent of [the] child, [the putative father] must be considered a nonparent under the Child Custody Act and his child custody claim is barred." *Id*., citing *Ruppel v Lesner*, 421 Mich 559, 565; 364 NW2d 665 (1984).

The central premise in *Girard* was that, given the court's conclusion that the putative father did not have

standing to contest paternity, the putative father "clearly could not obtain a determination that he was the natural or biological father of the child." *Id.* at 251. The Legislature's amendment to the Child Custody Act does not alter this central premise. The purpose of the 2004 amendment was to provide statutory rights to adoptive parents. The phrase "natural parent" was used by the Legislature to distinguish between adoptive parents and non-adoptive parents. Nothing in the amendment supports the conclusion that it was intended to circumvent the Paternity Act. Pecoraro simply cannot use the Child Custody Act to obtain a determination that he is the father under the Paternity Act. Whether the putative father would be considered a natural or biological parent under the Child Custody Act is irrelevant unless he can first establish paternity under Michigan's Paternity Act. Accordingly, we reject Pecoraro's claim under the Child Custody Act.

### C. THE FULL FAITH AND CREDIT CLAUSE OF THE UNITED STATES CONSTITUTION

Pecoraro also argues that Michigan is required to give effect and full force to the New York order of filiation. Specifically, Pecoraro argues that the New York judgment must be honored under the Full Faith and Credit Clause of the United States Constitution, art IV, § 1, and the Uniform Enforcement of Foreign Judgments Act, (UEFJA), MCL 691.1171 *et seq.* Because the UEFJA specifically references a "judgment, . . . that is entitled to full faith and credit," MCL 691.1172, Pecoraro's argument under the UEFJA rises or falls on his constitutional claim under the Full Faith and Credit Clause.

The Full Faith and Credit Clause provides, in relevant part, that "Full Faith and Credit shall be given in

each State to the Public Acts, Records, and judicial Proceedings of every other State." US Const, art IV, § 1. The purpose of the Full Faith and Credit Clause "is to prevent the litigation of issues in one state that have already been decided in another." *Martino v Cottman Transmission Sys, Inc*, 218 Mich App 54, 58; 554 NW2d 17 (1996). A foreign judgment is conclusive and must be recognized if jurisdiction has been obtained over the parties and the subject matter. *Baker v Gen Motors Corp*, 522 US 222, 233; 118 S Ct 657; 139 L Ed 2d 580 (1998); see *Nat'l Equip Rental, Ltd v Miller*, 73 Mich App 421, 424; 251 NW2d 611 (1977).

Before a court is bound by a judgment rendered in another state, however, it may inquire into its jurisdictional basis, and if either personal or subject-matter jurisdiction is lacking, full faith and credit is not due. *Underwriters Nat'l Assurance Co v North Carolina Life & Accident & Health Ins Guaranty Ass'n*, 455 US 691, 705; 102 S Ct 1357; 71 L Ed 2d 558 (1982). Thus, collateral attack of a foreign judgment is permitted in Michigan by showing that the judgment a party is seeking to enforce was void for want of jurisdiction in the court that issued it. *Nash v Salter*, 280 Mich App 104, 119-120; 760 NW2d 612 (2008). Accordingly, the courts of this state are not obliged under the federal Constitution to give a foreign judgment full faith and credit where the issuing court lacked jurisdiction over the subject matter or the parties. *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 217; ___ NW2d ___; *California v Max Larsen, Inc*, 31 Mich App 594; 597-598, 187 NW2d 911 (1971). Further,

> [t]he Due Process Clause of the Fourteenth Amendment limits the jurisdiction of state courts to enter judgments affecting the rights or interests of nonresident defendants. As a result, a valid judgment affecting a nonresident's rights or interests may only be entered by a court having

personal jurisdiction over that defendant. [*Jeffrey v Rapid American Corp*, 448 Mich 178, 185; 529 NW2d 644 (1995) (citations omitted).]

We hold that the New York order of filiation was not a valid and binding judgment as to Wallat. We base this holding on three distinct but related findings. First, the New York court lacked personal jurisdiction over Wallat. This point is not in contention. The New York court expressly found that it lacked personal jurisdiction over Wallat. Upon finding that the New York court lacked jurisdiction over him, Wallat was not required to submit to the jurisdiction of New York or put his parental rights in peril.

Second, the New York court also found that Wallat was a necessary party to the paternity proceedings in New York. The court recognized that, as Rostigno-Wallat's spouse and the legal father under Michigan law, Wallat had exercised parental rights over the child and had established himself as a stable and substantial presence in the life of the child. The New York court observed that it could not issue an order of filiation to Pecoraro without substantially impacting Wallat's parental rights under Michigan law.

Third, the New York court expressly recognized that the effect of its action would ultimately have to be determined by a Michigan court. We presume the New York court recognized this point because it lacked jurisdiction over a necessary party.

We are unpersuaded by Pecoraro's claim that Wallat's remedy, if any, was through the New York appellate court, which affirmed the order of filiation. Again, the New York court found it lacked personal jurisdiction over Wallat and it found that Wallat was a necessary party to the proceedings. Upon entering the judgment, the court dismissed the claims asserted against Wallat

by Pecoraro for lack of personal jurisdiction. In essence, Pecoraro is claiming that Wallat should have pursued appellate rights when Wallat had no adverse ruling or judgment imposed against him. Simply put, Pecoraro is asserting that Wallat was obligated to submit to the jurisdiction of New York or forfeit his parental rights. Pecoraro offers no legal authority for his position. Moreover, we are aware of no case that requires a party to submit to the jurisdiction of a court or place his rights at risk.

Similarly, we are not persuaded by the argument that the New York court order should be honored because, in arguing the merits of the underlying claim, Rostagno-Wallat protected the interests of Wallat. We conclude that the interests of Rostagno-Wallat, the mother, were not consistent with the interests and rights of Wallat, the legal father. Rostagno-Wallat's parental rights as mother were never at risk in this litigation. More significant, however, is the notion that a judgment issued in a matter that does not include a necessary party has no effect. As a result, the courts of the state of Michigan are not obliged to give the New York order of filiation full faith and credit.

### III. CONCLUSION

Pecoraro lacks standing to assert his claim of paternity under Michigan's Paternity Act. Because New York admittedly lacked personal jurisdiction over Wallat, a necessary party to the proceedings in New York, the order of filiation issued by the New York court is not entitled to full faith and credit under article IV, § 1 of the United States Constitution.

We reverse the judgment of the trial court and remand for entry of judgment consistent with this opinion. We do not retain jurisdiction.