PEOPLE v WAMBAR

Docket No. 304116. Submitted July 18, 2012, at Detroit. Decided March 26, 2013, at 9:05 a.m.

Helmet Wambar pleaded guilty in the Wayne Circuit Court, Linda V. Parker, J., to a charge of unlawful taking of a child. Defendant filed a delayed application for leave to appeal, contending that he could not be convicted of attempting to take the child, his biological child, even though his parental rights to the child had been terminated. The Court of Appeals granted defendant's application

The Court of Appeals *held*:

1. A person may cease to be a parent for certain purposes under the law if the person's status as a parent has been terminated in a judicial proceeding. In light of the termination of defendant's parental rights, the exclusion of defendant as a "natural parent" for purposes of MCL 750.350(2) best gives effect to the Legislature's intent in enacting the statute.

2. Although the Legislature could have added an explicit provision to MCL 750.350(2) explaining that the phrase "natural parent" does not encompass a person whose parental rights have been terminated, in light of the special legal definition of "parent" and the general import of a termination of parental rights, the exemption in MCL 750.350(2) should be read to exclude a person such as defendant from being considered a "natural parent." Defendant did not fit within the definition of "natural parent" in MCL 750.350(2).

Affirmed.

WILDER, J., concurring, joined in the result reached by the majority but wrote separately to offer an additional basis for concluding that defendant is not a "natural parent" under Michigan law. The use of the phrase "natural parent" in MCL 750.350(2) was neither intended to circumvent the meaning of the phrase "natural parent" as that phrase is used in the Child Custody Act, MCL 722.21 *et seq.*, nor to undermine the legislative determination that once a court terminates a person's parental rights, there may be no further effort to unite the child with the former parent. Whether a person is a "natural parent" under MCL 750.350(2)

must, under certain circumstances, be determined without regard to whether there is a biological connection with the child. Defendant's conviction should be affirmed.

1. STATUTES — WORDS AND PHRASES — PARENT.

A person may cease to be a "parent" for certain purposes under the law if the person's status as a parent has been terminated in a judicial proceeding.

2. CRIMINAL LAW — KIDNAPPING — BIOLOGICAL PARENTS — WORDS AND PHRASES — NATURAL PARENT.

A person who is the biological father or mother of a child and has had his or her parental rights to the child terminated is not a "natural parent" of the child for purposes of the subsection of the statute prohibiting the kidnapping of a child under the age of 14 that provides that an adoptive or natural parent of the child shall not be charged with and convicted of a violation of the statute (MCL 750.350[2]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals, for the people.

*Adil Haradhvala* for defendant.

Before: METER, P.J., and FITZGERALD and WILDER, JJ.

METER, P.J. We granted defendant's delayed application for leave to appeal his plea-based conviction of attempted unlawful taking of a child, MCL 750.92; MCL 750.350.[1] The trial court sentenced defendant to five years' nonreporting probation and ordered that defen-

---

[1] Defendant had also been charged with four counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim under 13 years old), five counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a) (victim under 13 years old), engaging a child in sexually abusive activity, MCL 750.145c(2), and custodial interference, MCL 750.350a. The prosecution dropped the criminal-sexual-conduct and sexually-abusive-activity charges. The trial court dismissed the custodial-interference charge.

dant have no contact with the victim, AW, his biological child. Defendant argues that his conviction must be reversed because he could not be convicted of attempting to take his biological child, even though his parental rights to the child had earlier been terminated.[2] We disagree and affirm.

The parties stipulated to the following factual summary:

> Beginning on Sunday, January 3rd, 2010, at 6896 Penrod, in the City of Detroit, County of Wayne, State of Michigan, the Defendant did assist or aid and abet Ms. La[Q]uanda Wambar [the child's biological mother] in maliciously, forcibly or fraudulently taking or carrying away [AW] . . . [and d]id take or carry away or entice away [AW], then age six, with the intent to detain or conceal [AW] from her legal guardian at the time . . . .

> And that that happened between the time of January 3rd, 2010, until they were discovered by police on January 5th, 2010, at 15327 Cheyenne, in the City of Detroit, County of Wayne, State of Michigan. And that [defendant] actively assisted [LaQuanda] in helping [LaQuanda] to do that, to detain the child away from that person.[3]

Before entering his plea (during which he expressly preserved for appeal the issue we address today), defendant argued for a dismissal of the attempted-taking count on the basis of MCL 750.350(2). MCL 750.350 states:

> (1) A person shall not maliciously, forcibly, or fraudulently lead, take, carry away, decoy, or entice away, any child under the age of 14 years, with the intent to detain or conceal the child from the child's parent or legal guardian,

---

[2] Defendant's rights, as well as the mother's rights, were terminated after an incident during which the young child ingested cocaine.

[3] In connection with the incident, LaQuanda pleaded guilty to a charge of attempted unlawful taking of a child, and it does not appear that she has appealed her conviction.

or from the person or persons who have adopted the child,
or from any other person having the lawful charge of the
child. A person who violates this section is guilty of a felony,
punishable by imprisonment for life or any term of years.

   (2) An adoptive or natural parent of the child shall not
be charged with and convicted for a violation of this
section.[4]

Defendant argued that MCL 750.350(2) precluded
his conviction in the present case because "natural
parent" means biological parent and encompasses him.
The trial court disagreed, stating, in part:

   [I]t's just inconceivable the [L]egislature would have
wanted to allow for an exemption, if you will, of a person,
of a parent being charged with kidnapping once the paren-
tal rights have been terminated. Don't [sic] seem conceiv-
able that the [L]egislature would have wanted to protect a
parent who no longer, really in the eyes of the law, is a
parent. For all intents and purposes, they have no right to
be a parent. Those rights have been permanently termi-
nated.

In the present appeal, defendant raises the "natural
parent" issue once again. Resolution of this issue in-
volves statutory interpretation, and thus our review is
de novo. *People v Flick*, 487 Mich 1, 8-9; 790 NW2d 295
(2010).

   The overriding goal of statutory interpretation is to
ascertain and give effect to the Legislature's intent. The
touchstone of legislative intent is the statute's language.
The words of a statute provide the most reliable indicator
of the Legislature's intent and should be interpreted on the
basis of their ordinary meaning and the overall context in
which they are used. An undefined statutory word or
phrase must be accorded its plain and ordinary meaning,

---

[4] Instead of being charged under MCL 750.350, adoptive or natural
parents may be charged under the parental-kidnapping statute, MCL
750.350a.

unless the undefined word or phrase is a term of art with a unique legal meaning. When we interpret the Michigan Penal Code, we do so according to the fair import of [the] terms, to promote justice and to effect the objects of the law. [*Id.* at 10-11 (citations and quotation marks omitted).]

Defendant claims that this Court should interpret the term "natural" to be a synonym for biological. The legal and ordinary definitions of the word "natural" do imply a physical link. *Random House Webster's College Dictionary* (1997) defines "natural," in relevant part, as being "related by blood rather than by adoption." Similarly, Black's Law Dictionary (9th ed) defines "natural," in part, as "[o]f or relating to birth," as in a "natural child as distinguished from [an] adopted child."[5]

A pertinent question, however, is whether defendant is AW's "parent" for purposes of the statute in question. According to Black's, the term "parent" has a specific meaning in the law. See *Flick*, 487 Mich at 11 (acknowledging that certain terms have a unique legal meaning). Indeed, Black's Law Dictionary (9th ed) defines the term "parent," in part, as "[t]he *lawful* father or mother of someone" (emphasis added). Black's goes on to state:

In ordinary usage, the term denotes more than responsibility for conception and birth. The term commonly includes (1) either the natural father or the natural mother of a child, (2) either the adoptive father or the adoptive mother of a child, (3) a child's putative blood parent who has expressly acknowledged paternity, and (4) an indi-

[5] However, we acknowledge the point touched on in the concurring opinion—the phrase "natural parent" is not always defined under the law as referring to a parent who biologically produced a child, because of specific rules relating to children born during wedlock. See, generally, *Pecoraro v Rostagno-Wallat*, 291 Mich App 303, 312-314; 805 NW2d 226 (2011).

vidual or agency whose status as guardian has been established by judicial decree. *In law, parental status based on any criterion may be terminated by judicial decree.* [Emphasis added.]

This explication indicates that a person may cease to be a parent for certain purposes under the law if that person's status as a parent has been terminated in a legal proceeding. Here, defendant's status as a parent was indeed terminated in a legal proceeding.

In light of the termination of defendant's parental rights, the exclusion of defendant as a "natural parent" for purposes of MCL 750.350(2) best "give[s] effect to the Legislature's intent." *Flick*, 487 Mich at 10. The Legislature has authorized the courts to terminate a person's parental rights in limited situations where the child's health or safety is at risk. See MCL 712A.19b(3). Once a court terminates parental rights, all efforts to reunite the child with the former parent are discontinued. MCL 712A.19b(5). It would be anomalous for the Legislature to authorize a court to terminate a person's parental rights but to protect that same person if he or she attempted to take the child away from a person with legal rights to the child.[6]

Other statutes underline the significance of a termination of parental rights. MCL 333.10102(t), dealing with anatomical gifts, explicitly defines the term "parent" as "a parent whose parental rights have not been terminated." In the context of intestate succession, MCL 700.2114(3) states that "[t]he permanent termination of parental rights of a minor child by an order of

---

[6] MCL 750.350a allows for a conviction if an adoptive or natural parent takes a child with the intent to keep the child from any other parent or guardian exercising custody or parenting-time rights. However, the potential punishment under MCL 750.350a is much less than under MCL 750.350.

a court of competent jurisdiction . . . ends kinship between the parent whose rights are so terminated and the child for purposes of intestate succession by that parent from or through that child." While it is true that the Legislature could have added an explicit provision to MCL 750.350(2) explaining that the phrase "natural parent" does not encompass a person whose parental rights have been terminated, we nonetheless conclude, in light of the special legal definition of "parent" and in light of the general import of a termination of parental rights, that the exemption in MCL 750.350(2) should be read to exclude a person such as defendant.

Cases from other jurisdictions support this conclusion. In *People v Brown*, 264 AD2d 12, 13-14; 702 NYS2d 739 (2000), the New York Supreme Court, Appellate Division, concluded that a biological mother whose child had been adopted was not a parent of that child for purposes of a potential defense to a kidnapping charge because a domestic-relations statute stated that adopted children should be treated as the child of the adoptive parents. The court stated that "[t]he statute [providing relatives of the person abducted with a defense to a kidnapping charge] is stretched beyond the limits of its intent if we accept the view that a biological parent, with no legal rights or responsibilities with respect to the child, is entitled to the benefit of the affirmative defense." *Id.* at 14. Similarly, in *State v Wilhite*, 160 Ariz 228, 229-231; 772 P2d 582 (Ariz App, 1989), the Arizona Court of Appeals held that the defendant, the biological father of a kidnapped child, was not a "parent" (and thus subject to lesser penalties) within the meaning of a custodial-interference statute because his parental rights had been terminated and the child had been adopted by the defendant's brother.

Defendant cites *People v Fields*, 101 Mich App 287; 300 NW2d 548 (1980), in support of his argument on appeal. *Fields*, however, is largely inapposite because it dealt with a prior version of MCL 750.350 and with a parent whose parental rights had not been terminated. The case does provide some tangential guidance in the present situation, but this guidance does *not* weigh in defendant's favor. The statute at issue in *Fields* read:

> Any person who shall maliciously, forcibly or fraudulently lead, take or carry away, or decoy or entice away, any child under the age of 14 years, with intent to detain or conceal such child from its parent or guardian, or from the person or persons who have lawfully adopted said child or from any other person having the lawful charge of said child, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years. In case such child shall have been adopted by a person or persons other than its parents, in accordance with the statute providing for such adoption, then this section shall apply as well to such taking, carrying, decoying, or enticing away of such child, by its father or mother, as by any other person. [See MCL 750.350 before its amendment by 1983 PA 138.]

The children at issue in *Fields* had been made temporary court wards, and the biological parents took the children from a social worker as she was returning them to their temporary placements. *Fields*, 101 Mich App at 289-290. The prosecution argued that the defendant, the biological mother, could be prosecuted under the statute in question, but the Court of Appeals concluded that she could not, in light of "the specific reference to the conduct of natural parents in the context of *adopted* children . . . ." *Id.* at 290-291 (emphasis added).[7] Significantly, the Court then added the following commentary:

---

[7] The Court concluded that the "more general" prohibition of the first sentence of the statute did not apply to the defendant because of her parental status and that any possible prosecution would be under the more specific second sentence. *Id.* The Court then found that prosecution

If the statute's application should be expanded to cover the taking of children by natural parents in other than the adoption setting, such expansion should reasonably include only those cases where parental rights have been similarly severed.

. . . There is a crucial difference between a parent who has temporarily lost custody of a child and one who has permanently lost parental rights. A parent whose rights remain undecided at the time of the taking may not have any right to custody, but we are of the opinion that temporary loss of physical possession of the child is not the proper basis for decision. If application of the statute is to extend beyond parental taking of an adopted child, such taking following *permanent* loss of parental rights or custody is most closely akin to the conduct actually prohibited by the language. [*Id.* at 292.]

Given the outdated statute at issue, *Fields* provides no binding law for use in the present case, but the Court's commentary nonetheless does mesh with the principles we espouse today, in that the Court recognized the special significance of a permanent loss of parental rights.

We conclude that defendant did not fit within the definition of "natural parent" in MCL 750.350(2). Thus, his conviction was proper and the trial court did not erroneously deprive him of presenting a defense.[8]

Affirmed.

FITZGERALD, J., concurred with METER, P.J.

---

was not possible under the second sentence in light of the temporary nature of the wardship. *Id.* at 292.

[8] Defendant contends that whether the phrase "natural parent" applied to him should have been a jury question. This contention is meritless. Indeed, the issue in the present case was one of law for the court to decide. See, generally, *People v Gayheart*, 285 Mich App 202, 211; 776 NW2d 330 (2009). Finally, we note that nothing in this opinion should be read as impacting the Michigan Supreme Court's decision in *In re Beck*, 488 Mich 6, 8, 16; 793 NW2d 562 (2010), that parental rights and parental obligations are separate and that a child-support obligation may remain in effect even after parental rights are terminated.

WILDER, J. (*concurring*). I join in the result but write separately to offer an additional basis for concluding that defendant is not a "natural parent" under Michigan law.

Pursuant to MCL 722.1(b), " 'Parents' means natural parents, if married prior or subsequent to the minor's birth; adopting parents, if the minor has been legally adopted; or the mother, if the minor is illegitimate." MCL 722.22(h) defines "parent" as "the natural or adoptive parent of a child." In *Pecoraro v Rostagno-Wallat*, 291 Mich App 303, 313-314; 805 NW2d 226 (2011), this Court found that the plaintiff, regardless of his assertion that he was the biological father of the minor child, had no standing to establish paternity under the Michigan Paternity Act, MCL 722.11 *et seq.*, and thus could not be the parent of the minor child as that phrase is used in the Paternity Act because the mother of the child was married to another man when the child was conceived. In support of this conclusion, this Court cited *Girard v Wagenmaker*, 437 Mich 231, 251; 470 NW2d 372 (1991), in which our Supreme Court concluded that "a putative father of a child born to a woman married to another man . . . could not obtain a determination that he was the natural or biological father of the child under the Child Custody Act [MCL 722.21 *et seq.*]." This Court further noted in *Pecoraro* that "[t]he phrase 'natural parent' was used by the Legislature [in the Child Custody Act] to distinguish between adoptive parents and non-adoptive parents" but was not intended to circumvent the Paternity Act, which under certain circumstances will not recognize a putative father claiming to be the biological father of a minor child as that child's "natural parent." *Pecoraro*, 291 Mich App at 314.

As applied to the facts in this case, I would conclude, similar to the conclusion reached by the *Pecoraro* Court,

that the use of the phrase "natural parent" in MCL 750.350(2) was neither intended to circumvent the meaning of the phrase "natural parent" as that phrase is used in the Child Custody Act nor undermine the Legislative determination that once a court terminates a person's parental rights, there may be no further efforts to reunite the child with the former parent. In other words, whether a person is a natural parent under MCL 750.350(2) must, under certain circumstances, be determined without regard to whether there is a biological connection with the minor child.

Thus, together with these additional reasons stated above, I agree with the majority that defendant's conviction should be affirmed.