Taylor, J.
This case presents a dispute under the grandparent visitation statute, MCL 722.27b, between a mother, Theresa Seymour,[1] and a paternal grandmother, Catherine DeRose, who sought visitation with her granddaughter. The trial court ordered limited visitation, and the mother appealed. The Court of Appeals held that this statute was unconstitutional. We affirm.
I. FACTS
The child at issue in this case was bom during the marriage of Theresa and Joseph DeRose. In 1997, Joseph DeRose was sentenced to twelve to twenty years in prison after pleading guilty of first-degree criminal sexual conduct (csc-i) involving his stepdaughter. Theresa filed for divorce, and a default *323 judgment of divorce was entered the following year. Theresa was awarded sole legal and physical custody of the child.
While the divorce was pending, Catherine DeRose filed a petition for visitation under the grandparent visitation statute, MCL 722.27b.[2] Theresa DeRose opposed visitation because the grandmother denied that her son was guilty of the crimes he admitted committing and, thus, in Theresa’s view, contact with the child was not in the child’s best interest.
*324 The Friend of the Court, after investigation, concluded that Catherine DeRose lacked standing to bring this petition for visitation. After the grandmother objected, another Friend of the Court investigation took place resulting in a recommendation that the grandmother have two hours of supervised visitation with the child on alternate Saturdays, increasing to four hours after an eight-month period.
The mother objected to the recommendation, and the case proceeded to a hearing in the Wayne Circuit Court. No testimony or evidence was taken at the hearing. The trial court granted the grandmother’s petition, stating:
But it doesn’t strike me that there is any reason here that a child should be deprived of a grandmother. Grandmothers are very important. Grandmothers are very important, [sic] I don’t say that just because I am one, but I do believe they are important. I have a niece who doesn’t have any and she borrows grandparents and I realize this is difficult, a very difficult time for the 12-year-old, but the 12-year-old is not going to be required to see this lady. Not that it necessarily would be terrible, but I’m not saying it would be good. She is not going to see her. That’s not the point.
This is not a motion for custody so that [the child] would be taken away from her sisters for the rest of her life or for a long period of time, even a weekend. This is like two hours of supervised visitation and I know that mom—now, I’m sure mom feels, well, I made a bad choice, I wasn’t aware—this, that and the other thing. So now she wants to overcorrect.
It makes no sense to me that this grandmother can’t have two hours of supervised visitation and even four hours of supervised visitation as recommended by the Friend of the Court and that’s plenty of time to evaluate whether anything bad or wrong happens.
It’s very troubling that the concept that somehow this whole incident can just be erased by keeping the child’s *325 actual grandmother away from her. It can’t be, and everybody is going to have to learn to deal with it which is not happy, it’s not good.
* * *
It doesn’t strike me that a supervised visitation is wrong, so I would affirm the recommendation.
The mother sought relief in the Court of Appeals, arguing that the grandparent visitation statute was unconstitutional.
The Court of Appeals, in a split decision, reversed the decision of the trial court. 249 Mich App 388; 643 NW2d 259 (2002). The panel concluded the grandparent visitation statute was unconstitutional on the basis of the United States Supreme Court decision in Troxel v Granville, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000), which dealt with a somewhat similar third-party visitation statute in Washington that the Court ruled was unconstitutional. The Court of Appeals approach in deciding this matter was to compare the Washington statute to the Michigan statute to determine if the defects found by the Supreme Court in the Washington statute were mirrored in the Michigan act. Having done that, the Court of Appeals concluded that the Michigan statute was fatally similar to the Washington statute and, thus, it was unconstitutional pursuant to the Troxel analysis. As the panel said, “Simply put, if a court in Washington cannot constitutionally be vested with the discretion to grant visitation to a nonparent on the basis of a finding that it is in the child’s best interests to do so, then a court in Michigan cannot be obligated under statute to do so based upon the same finding.” 249 Mich App 394.
*326 The Court of Appeals also addressed whether, by means of reading “requirements that go beyond the text of the statute,” 249 Mich App 395, into the statute, it could cure the constitutional deficiencies. The panel declined to do this because it believed such actions to be the responsibility of the Legislature and beyond the authority of a court.
Catherine DeRose sought relief in this Court, and we granted leave to appeal.[3]
II. STANDARD OF REVIEW
The constitutionality of a statute is reviewed de novo. Tolksdorf v Griffith, 464 Mich 1, 5; 626 NW2d 163 (2001). Statutes are presumed constitutional unless the unconstitutionality is clearly apparent. McDougall v Schanz, 461 Mich 15, 24; 597 NW2d 148 (1999).
III. ANALYSIS
In 2000, the United States Supreme Court heard and decided the Troxel case concerning the constitutionality of third-party visitation. At issue was the state of Washington’s third-party visitation statute, Wash Rev Code 26.10.160(3), which was as expansive in granting third parties visitation privileges as can readily be envisioned. It stated:
Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether *327 or not there has been a change of [sic, “in”] circumstances. [Troxel, supra at 61.]
Operating under this statute, grandparents Jenifer and Gary Troxel sought greater visitation with their grandchildren than the children’s mother would allow. The trial court granted visitation under the act, but the Washington Court of Appeals reversed for lack of standing. Troxel, supra at 62; In re Visitation of Troxel, 87 Wash App 131, 137; 940 P2d 698 (1997). The grandparents appealed, and the Washington Supreme Court, resting its decision on the United States Constitution, held that the statute was unconstitutional because it interfered with the right of parents, pursuant to substantive due process, to raise their children. Troxel, supra at 62-63; In re Smith, 137 Wash 2d 1, 13-14; 969 P2d 21 (1998). The statute did this, the court opined, because, contrary to relevant, constitutional doctrines on substantive due process, the court could order visitation over the parents’ objection without first determining that court intervention was required to prevent harm or potential harm to the child. Moreover, the Washington Supreme Court held that the statute, by allowing any person to petition for visitation at any time subject only to a judge’s unguided determination of the best interests of the child, was so overbroad that it violated constitutional requirements of due process. Id. at 30. Accordingly, it was unconstitutional for the additional reason that, as applied, it operated to deprive parents of their constitutionally protected rights to due process.
On appeal the United States Supreme Court also found the statute unconstitutional. The Supreme Court’s holding, while clear regarding the outcome, is, unfortunately, written in so many voices that a unify *328 ing rationale is difficult to discern. Initially, in reviewing the decision it is important to note that the Court did not, unlike the Washington Supreme Court, analyze the case on the basis of theories implicating facial invalidities such as a violation of substantive due process would entail. In fact, only Justices Souter, Stevens, and Scalia, with three different positions as it developed, used that approach to decide the matter. Moreover, the plurality of four justices for whom Justice O’Connor wrote[4] seemed to deal with what were facial-challenge issues while not fully acknowledging that such was the case. Yet, notwithstanding these difficulties, the Washington statute, when the smoke cleared, was held to be unconstitutional. It falls to us, as it has to other state supreme courts post-Troxel, to attempt to determine what at least five of the six justices who came to their conclusion did agree upon. We believe, guardedly, that a majority can be found in the Court’s handling of the second issue that the Washington Supreme Court discussed, namely, the statute’s overbreadth that caused it to violate parental liberty interests that are protected by the due-process guarantees of the United States Constitution.
The effort to discern where at least five justices agreed must begin with Justice O’Connor’s plurality opinion. Its discussion of the law began by restating that, pursuant to established constitutional law, the Fourteenth Amendment’s Due Process Clause includes a substantive component that “ ‘provides heightened protection against government interfer *329 ence with certain fundamental rights and liberty interests.’ ” Troxel, supra at 65, quoting Washington v Glucksberg, 521 US 702, 720; 117 S Ct 2258; 138 L Ed 2d 772 (1997). One of the liberty interests the Court identified, after characterizing it as perhaps the oldest such interest, is “the interest of parents in the care, custody, and control of their children . . . .” Troxel, supra at 65, quoting Meyer v Nebraska, 262 US 390, 399, 401; 43 S Ct 625; 67 L Ed 1042 (1923), and Pierce v Society of Sisters, 268 US 510, 534-535; 45 S Ct 571; 69 L Ed 1070 (1925). Further, the opinion reaffirmed that it is presumed that “so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent’s child.” Troxel, supra at 68-69. See Reno v Flores, 507 US 292, 304; 113 S Ct 1439; 123 L Ed 2d 1 (1993).
With this discussion of the rights of parents to substantive due process behind her, Justice O’Connor apparently decided not to resolve the case on that basis. Rather, she continued her discussion by concluding that the Washington statute was an unconstitutional infringement of parental rights because the statute failed to require that a trial court accord deference to the decisions of fit parents regarding third-party visitation. According to Justice O’Connor, in order for a nonparental visitation statute to allow for such deference, it must articulate a presumption that parents act in their children’s best interests. Additionally, the statute must place the burden of proof on the petitioner. Troxel, supra at 67-70. Moreover, Justice O’Connor asserted that the statute was overbroad *330 because anyone, at any time, could petition for visitation.[5] Thus, her opinion affirmed the Washington Supreme Court decision, but, we emphasize, did not hold that all nonparental visitation statutes were facially unconstitutional. Troxel, supra at 73.
Justice Souter, in his concurrence, began by asserting that he would affirm the decision of the Washington Supreme Court on the basis that its analysis of the issues relating to substantive due process was consistent with the United States Supreme Court jurisprudence in this area. He continued by saying that he saw “no error” in the Washington Supreme Court’s second justification that the “statute’s authorization of ‘any person’ at ‘any time’ to petition and to receive visitation rights subject only to a free-ranging best-interest-of-the-child standard” because it swept “too broadly and is unconstitutional on its face.” Id. *331 at 76-77.[6] As he saw it, this meant that the Washington Supreme Court had said “ [consequently, there is no need to decide whether harm is required or to consider the precise scope of the parent’s right or its necessary protections.” Id.
Justice Thomas also concurred that the issues concerning substantive due process were not addressed and that he agreed with the O’Connor plurality in its “recognition of a fundamental right of parents to direct the upbringing of their children . . . .” Id. at 80. He then concluded that he would apply strict scrutiny to the “infringements of fundamental rights” by the state of Washington and that the statute failed this test because Washington “lacks even a legitimate governmental interest—to saying nothing of a compelling one—in second-guessing a fit parent’s decision regarding visitation with third parties.” Id.
Accordingly, it is from the O’Connor plurality, as well as the opinions of Justices Souter and Thomas, that we must discern the principles that caused them to conclude that the Washington statute was unconstitutional.[7] Once accomplished, we then apply those principles to the Michigan statute to determine if our *332 statute is sufficiently different from the Washington statute at issue in Troxel to pass constitutional muster.
First, to isolate the agreed-upon matters between the opinion of Justice O’Connor and those of Justices Souter and Thomas, it appears to us that all six justices agreed that parents have what they described as a “fundamental right” to raise their children.[8] Further, on the basis of this “fundamental right,” both Justice O’Connor and Justice Souter found that parents have the right to make decisions for children, and such decisions must be accorded “deference” or “weight.” Troxel, supra at 67, 78 n 2. Therefore, a visitation statute of the sort at issue here must, as we read Troxel, require that a trial court accord deference to the decisions of fit parents regarding third-party visitation. That is, it is not enough that the trial court simply disagrees with decisions the parents have made regarding third-party visitation. Troxel, supra at 67, 77-78.
The Michigan statute states, in relevant part:
(1) Except as provided in this subsection, a grandparent of the child may seek an order for grandparenting time in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. . . .
(2) As used in this section, “child custody dispute” includes a proceeding in which any of the following occurs:
(a) The marriage of the child’s parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.
*333 (3) A grandparent seeking a grandparenting time order may commence an action for grandparenting time, by complaint or complaint and motion for an order to show cause, in the circuit court in the county in which the grandchild resides. If a child custody dispute is pending, the order shall be sought by motion for an order to show cause. The complaint or motion shall be accompanied by an affidavit setting forth facts supporting the requested order. The grandparent shall give notice of the filing to each party who has legal custody of the grandchild. A party having legal custody may file an opposing affidavit. A hearing shall be held by the court on its own motion or if a party so requests. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or specific terms and conditions. If a hearing is not held, the court shall enter a grandparenting time order only upon a finding that grandparenting time is in the best interests of the child .... The court shall make a record of the reasons for a denial of a requested grandparenting time order.
There is no indication that the statute requires deference of any sort be paid by a trial court to the decisions fit parents make for their children.[9] Thus, like the Washington statute at issue in Troxel, it is for this reason, the fact that our statute fails to require that a trial court accord deference to the decisions of fit *334 parents regarding grandparent visitation, that we find our statute is constitutionally deficient.[10]
IV. CONCLUSION
Aware of the statute’s constitutional infirmities, we must declare it constitutionally invalid. We have not, unlike Justice Kelly’s opinion, addressed the “substantive due process” argument, i.e., whether a predicate of any such intervention into the parent-child relationship is a showing of harm or potential harm to the child, because it is not necessary to resolve this case under Troxel. Moreover, after Troxel it appears that federal constitutional law in this area is now not as predictable as it was before Troxel. One cannot read the many opinions in Troxel without concluding that an equilibrium has not been reached, and that the Supreme Court may be moving in the direction of rethinking its “substantive due process” jurisprudence so as to make it easier, or more difficult, for the state to intervene by ordering visitation in the parent-child relationship. Because we can decide this case without *335 endeavoring to read the portents on that matter, we prudentially decline to do so.
In conclusion, bound as we are by the decision in Troxel, we are compelled to affirm the judgment of the Court of Appeals and find the Michigan grandparent visitation statute unconstitutional as written.
Affirmed and remanded to the trial court for proceedings consistent with this opinion.
Corrigan, C.J., and Cavanagh, Young, and Markman, JJ., concurred with Taylor, J.

 Formerly Theresa DeRose.

 (1) Except as provided in this subsection, a grandparent of the child may seek an order for grandparenting time in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. . . .
(2) As used in this section, “child custody dispute” includes a proceeding in which any of the following occurs:
(a) The marriage of the child’s parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.
(3) A grandparent seeking a grandparenting time order may commence an action for grandparenting time, by complaint or complaint and motion for an order to show cause, in the circuit court in the county in which the grandchild resides. If a child custody dispute is pending, the order shall be sought by motion for an order to show cause. The complaint or motion shall be accompanied by an affidavit setting forth facts supporting the requested order. The grandparent shall give notice of the filing to each party who has legal custody of the grandchild. A party having legal custody may file an opposing affidavit. A hearing shall be held by the court on its own motion or if a party so requests. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or specific terms and conditions. If a hearing is not held, the court shall enter a grandparenting time order only upon a finding that grandparenting time is in the best interests of the child. . . .

. 467 Mich 884 (2002).

 Justice O’Connor’s opinion was joined by Chief Justice Rehnquist, Justice Ginsburg, and Justice Breyer.

 Under the statute, as she described it, should the trial judge disagree with the parent’s determination, the judge’s determination of what would be in the child’s best interests would prevail. Indeed, she concluded that the reasons offered in this case by the trial court in granting visitation indicated nothing more than a simple disagreement with the mother’s decision regarding visitation:
[T]he Superior Court made only two formal findings in support of its visitation order. First, the Troxels “are part of a large, central, loving family, all located in this area, and the [Troxels] can provide opportunities for the children in the areas of cousins and music.” Second, “the children would be benefitted from spending quality time with the [Troxels], provided that that time is balanced with time with the childrens’ [sic] nuclear family.” These slender findings, in combination with the court’s announced presumption in favor of grandparent visitation and its failure to accord significant weight to Granville’s already having offered meaningful visitation to the Troxels, show that this case involves nothing more than a simple disagreement between the Washington Superior Court and Granville concerning her children’s best interests. [Troxel, supra at 72 (citations omitted).]

 Justice Souter agreed with the plurality that the statute was unconstitutional because it failed to require a trial court to accord any deference to a fit parent’s decision regarding third-party visitation. Troxel, supra at 78 n 2 (Souter, J., concurring), quoting the plurality:
As Justice O’Connor points out, the best-interests provision “contains no requirement that a court accord the parent’s decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge.” [Citation omitted.]

 We do not review the remaining three opinions by Justices Scalia, Kennedy, or Stevens because of the lack of any relevant shared conclusions by these justices with the O’Connor, Souter, or Thomas positions.

 While the plurality and Justice Thomas, concurring, described this as a “fundamental right,” Troxel, supra at 66, 80, Justice Souter described it as a “substantive interest!].” Id., at 75 (Souter, J., concurring).

 Moreover, the clear language of MCL 722.27b(3) indicates that the court is only required to make a record of the reasons for its decision in a grandparenting visitation case if visitation is denied. Apparently, if visitation is granted, the trial court need not justify its decision with any factual findings or analysis. Thus, rather than giving any “special weight” to the determination of a fit parent, the thrust of this provision appears to favor grandparent visitation in the face of a contrary preference by a fit parent.

 It should be noted, however, that the Michigan statute is much narrower than Washington’s in conferring standing to pursue visitation. It, thus, appears to us to meet the Troxel tests in this regard. Rather than applying to any person at any time, it applies only to grandparents, and only in two situations: where there is a child-custody dispute before the court, or where the unmarried parent is deceased. MCL 722.27b(l) and (2). Further, a grandparent may only file once every two years, absent a showing of good cause, MCL 722.27b(4), under procedures articulated at MCL 722.27b(3). Moreover, Michigan’s courts cannot restrict the movement of the child solely to allow the grandparent to exercise the rights in the statute. MCL 722.27b(5). Noteworthy also is that the statute carefully sets out that a grandparenting-time order does not confer parental rights in those to whom the visitation is granted, MCL 722.27b(6), and that any orders granted under the act may be modified or terminated when in the best interests of the child, MCL 722.27b(7).