PORTER v HILL

Docket No. 306562. Submitted October 9, 2012, at Lansing. Decided
    June 11, 2013, at 9:00 a.m. Leave to appeal sought.
  Robert and Judith Porter brought an action in the Saginaw Circuit
    Court, James T. Borchard, J., against Christina M. Hill, seeking an
    order granting plaintiffs grandparenting time with Hill's two
    minor children. Hill is the biological mother of the children and
    sole legal parent of the children. The biological father of the
    children, Russell Porter, is the biological son of plaintiffs. Russell's
    parental rights to the children had been involuntarily terminated
    as a result of physical abuse, and Russell and defendant were
    subsequently divorced. Russell paid child support until he died and
    his parents thereafter brought the present action. Defendant
    sought summary disposition on the basis that plaintiffs lacked
    standing to pursue the order because their son's parental rights
    had been terminated. The trial court granted the motion. Plain-
    tiffs appealed the order granting summary disposition.

         The Court of Appeals *held*:

         1. At the time of his death, Russell was not a legal parent of the
    children. Plaintiffs, as Russell's parents, derived their rights as
    grandparents through Russell. Russell's death had no effect on his
    rights or those of plaintiffs. Accordingly, for purposes of this case,
    Russell was not a legal parent and plaintiffs are not legal grand-
    parents. Plaintiffs have no basis on which to seek an order of
    grandparenting time.

         2. There is no authority for plaintiffs' contention that the term
    "natural," as it is used in MCL 722.22 in defining "parent" and
    "grandparent" is merely a substitute for "biological."

         3. Russell ceased being a parent at all, in the eyes of the law,
    after his parental rights were terminated. Because he was not a
    "parent," it is axiomatic that he could not be a "natural parent."

         4. The facts that Russell paid child support until he died and
    that defendant claimed Social Security benefits for the children
    through Russell do not entitle plaintiffs to grandparenting time.
    In the absence of statutory authority, a parent who has had his

or her parental rights to a child terminated may not claim any right to see or contact the child attendant to the payment of child support.

Affirmed.

Boonstra, J., dissenting, would hold that the Legislature's use of the phrase "natural parent" and its affording to a grandparent a right to seek grandparenting time independent of parental rights and notwithstanding parental desires, along with the overarching concern for the best interest of the children that guides the Court of Appeals interpretation of the Child Custody Act, indicate both that plaintiffs have a special right or substantial interest in this case and that the statutory scheme at least implies that the Legislature intended to confer standing on plaintiffs. A person whose parental rights have been terminated, and who has therefore lost his or her rights as a "legal parent" remains a "natural parent" and, therefore, a "parent" under MCL 722.22. MCL 722.27b(5) recognizes the Legislature's intent that a "grandparent" seeking grandparenting time may be a "natural or adoptive parent" of a "parent . . . whose parental rights have been terminated." In other words, even though a person's parental rights have been terminated, he or she may still be a "parent" for purposes of enabling a grandparent to seek grandparenting time. The order dismissing plaintiffs' request for grandparenting time should be reversed.

1. Child Custody Act — Termination of Parental Rights — Words and Phrases — Parent — Grandparent.

  The Child Custody Act defines the term "parent" as "the natural or adoptive parent of a child" and the term "grandparent" as "a natural or adoptive parent of a child's natural or adoptive parent"; a person ceases being a "parent" at all, in the eyes of the law, after the person's parental rights are terminated and, because such a person is no longer a "parent," the person is also not a "natural parent" (MCL 722.22[e] and [h]).

2. Child Support — Termination of Parental Rights — Payment of Child Support — Right to Visitation.

  A parent who has had his or her parental rights to a child terminated may not, in the absence of statutory authority, claim any right to see or contact the child attendant to the payment of child support for the child.

*Dill & Brady* (by *Colin M. Dill*) for plaintiffs.

*Susan J. Tarrant* for defendant.

Before: FITZGERALD, P.J., and METER and BOONSTRA, JJ.

METER, J. Plaintiffs appeal as of right the trial court's order granting summary disposition to defendant. Plaintiffs argue that the trial court erred by ruling that they did not have legal standing to seek a grandparenting-time order. We affirm.

Defendant is the biological mother and sole legal parent of two children. The biological father of the children is defendant's ex-husband, Russell Porter, the biological son of plaintiffs. Russell's parental rights were involuntarily terminated as a result of physical abuse, and Russell and defendant subsequently divorced. Russell paid child support until his death.

Following their son's death, plaintiffs sought an order of grandparenting time. Defendant moved for summary disposition, arguing that plaintiffs did not have standing to pursue such an order, because their son's parental rights had been terminated. The trial court granted defendant's motion.

"Whether a party has standing is a question of law that we review de novo." *Manuel v Gill*, 481 Mich 637, 642; 753 NW2d 48 (2008) (citation and quotation marks omitted). We also review de novo a trial court's decision regarding a motion for summary disposition. *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008).

Michigan's Child Custody Act, MCL 722.21 *et seq.*, "is the exclusive means for pursuing" orders of parenting time. *Van v Zahorik*, 460 Mich 320, 328; 597 NW2d 15 (1999). MCL 722.27b(1) provides that "[a] child's grandparent may seek a grandparenting time order under 1 or more of the following circumstances: . . . (c) The child's parent who is a child of the grandparents is deceased." The term "parent" is defined as "the natural or adoptive parent of a child[,]" MCL 722.22(h), and the

term "grandparent" is defined as "a natural or adoptive parent of a child's natural or adoptive parent," MCL 722.22(e).

At the time of his death, Russell was not a legal parent of the children. He had no right to have any input regarding matters in their lives; in fact, to do so would have violated a court order. Plaintiffs, as Russell's parents, derived their rights as grandparents through him. Russell's death had no effect on his rights or those of plaintiffs, and there is no authority for plaintiffs' contention that "natural" as used in MCL 722.22 is merely a substitute for "biological." The recent case of *People v Wambar*, 300 Mich App 121; 831 NW2d 891 (2013), is instructive. At issue in *Wambar* was whether a man whose parental rights to a child had been terminated on the basis of abuse or neglect and who then attempted to unlawfully take the child could be convicted under the general child-taking statute, MCL 750.350, or whether the defendant should have been charged under the parental-kidnapping statute, MCL 750.350a. 300 Mich App at 123-124. The general statute states that "[a]n adoptive or natural parent of the child shall not be charged with and convicted for a violation of this section." MCL 750.350(2). The defendant argued that "natural parent" meant "biological parent" and encompassed him to the extent that he could not be convicted under MCL 750.350. *Wambar*, 300 Mich App at 124.

This Court upheld the defendant's conviction under the general statute, emphasizing that the defendant's status as a parent had been terminated in a legal proceeding, *id.* at 126, and that the phrase "natural parent" is not automatically equivalent to the phrase "biological parent," *id.* at 125 n 5. This Court stated that "[i]t would be anomalous for the Legislature to

authorize a court to terminate a person's parental rights but to protect[1] that same person if he or she attempted to take the child away from a person with legal rights to the child." *Id.* at 126.

Similarly, with respect to the present case, it would be anomalous for the Legislature to authorize a court to terminate a person's parental rights on the basis of abuse but then to somehow "revive" those rights for purposes of grandparent visitation. Accordingly, for purposes of the present case, Russell was not a legal parent,[2] plaintiffs are not legal grandparents, and they have no basis on which to seek an order of grandparenting time.

Plaintiffs argue that because their son continued to pay child support and thus met his parental responsibilities, they are entitled to grandparenting time, i.e., visitation, an express parental right. However, in *In re Beck*, 488 Mich 6, 8; 793 NW2d 562 (2010), the Michigan Supreme Court observed that, under Michigan's

---

[1] The potential punishment under the parental-kidnapping statute, MCL 750.350a, is much less than under MCL 750.350. See *Wambar*, 300 Mich App at 126 n 6.

[2] The dissent claims that we are equating the phrase "natural parent" with the phrase "legal parent." However, in stating that Russell was not a legal parent, we are emphasizing the fact that Russell ceased being a "parent" at all, in the eyes of the law, after his parental rights were terminated. Because he was not a "parent," it is axiomatic that he could not be a "natural parent." The juxtaposition of "natural parent" and "adoptive parent" in MCL 722.22 makes perfect sense in this context. The use of the term "natural" is employed to distinguish a *legal* parent affiliated with a child by reason of biology from a *legal* parent affiliated with a child by reason of adoption. As clearly stated in *Pecoraro v Rostagno-Wallat*, 291 Mich App 303, 314; 805 NW2d 226 (2011), "[t]he phrase 'natural parent' [in MCL 722.22(h)] was used by the Legislature to distinguish between adoptive parents and non-adoptive parents." It was not used to distinguish between adoptive parents and persons (i.e., nonparents) who produced a child by virtue of biological processes. See, generally, *id.* at 313-314.

statutory scheme, parental rights are distinct from parental obligations. The *Beck* Court held that while an order terminating parental rights terminates a parent's "liberty interest in 'the care, custody, and control of their children[,]' " see *id.* at 11, quoting *Troxel v Granville*, 530 US 57, 65; 120 S Ct 2054; 147 L Ed 2d 49 (2000), a termination order does not eliminate the parental obligation to support a child, *Beck*, 488 Mich at 15. A parent whose parental rights have been terminated "retains *absolutely no rights* with respect to the children and no right to interpose himself in the lives of his children." *Beck*, 488 Mich at 16 n 23 (emphasis added). "In the absence of statutory authority, the terminated parent may not claim *any* right to see or contact the children attendant to the payment of child support." *Id.*

Plaintiffs also emphasize that defendant claimed Social Security benefits for the children through Russell Porter; however, such benefits relate to the support obligation that continues, as noted, even after parental rights are terminated. Similarly, even if the children are entitled to inherit from Russell, such rights of the children to financial benefits do not somehow revive the parental rights of the parent.

Finally, plaintiffs cite MCL 722.27b(5), which provides:

> If 2 fit parents sign an affidavit stating that they both oppose an order for grandparenting time, the court shall dismiss a complaint or motion seeking an order for grandparenting time filed under subsection (3). This subsection does not apply if 1 of the fit parents is a stepparent who adopted a child under the Michigan adoption code, chapter X of the probate code of 1939, 1939 PA 288, MCL 710.21 to 710.70, and the grandparent seeking the order is the natural or adoptive parent of a parent of the child who is deceased or whose parental rights have been terminated.

We acknowledge that the second sentence of MCL 722.27b(5) appears to lend support to plaintiffs' argument in that it mentions a situation in which a grandparent seeks to visit a child even though the child's parent has had his or her parental rights terminated. However, the circumstances outlined (e.g., a stepparent adoption) are not present here, and thus MCL 722.27b(5) does not advance plaintiffs' case. As noted by defendant, it is likely that the Legislature included the termination-of-rights language in this statute in order to accommodate a situation in which a parent has voluntarily released his or her parental rights merely to allow for a stepparent adoption. We strongly urge the Legislature to amend this statute to clarify that the second sentence of MCL 722.27b(5) does not apply in cases where parental rights have been involuntarily terminated on the basis of neglect or abuse or in cases where parental rights have been relinquished following the initiation of child-protective proceedings.

Affirmed.

FITZGERALD, P.J., concurred with METER, J.

BOONSTRA, J. (*dissenting*). I respectfully dissent, for the reasons that follow.

### I. BASIC FACTS AND PROCEDURE

At issue in this case is whether the plaintiff grandparents of two minor children have a right to seek grandparenting time under the Child Custody Act, MCL 722.21 *et seq*. Of particular significance in the context of this case are the facts that (a) the children's biological father, Russell Porter, who is plaintiffs' son, is deceased, and (b) before Russell's death, his parental

rights were terminated by court order. Following Russell's death, plaintiffs sought grandparenting time. That request was opposed by defendant, the children's biological mother, who moved for summary disposition, contending that because of the termination of Russell's parental rights, plaintiffs did not have standing to seek grandparenting time.

The trial court granted summary disposition in favor of defendant, albeit grudgingly, stating:

> I'm going to make it real simple. This matter is going to go up on appeal no matter who wins or losses [sic]. I am going to keep it simple for appeal, because *it's something that the appellate courts should decide.*
>
> It's the Court's — and I am not making any determination on these grandparents. They appear to be fine people. *But I am going to have to rule that under the Child Custody Act your rights come through those of your child. And I'm ruling that the Child Custody Act does not allow, when somebody's parental rights are terminated, for the grandparents to seek visitation.*
>
> As I said, *I hope the Court of Appeals reverses me on this issue.* And I have kept it real simple so it can be taken up on appeal. But I think it's something that the Court of Appeals needs to decide, and it hasn't yet. And I'm ruling for summary judgment on behalf of the mother, and that the parental rights have been terminated. And, therefore, right to grand parenting visitation, in my view under the Child Custody Act, I don't see any legal support for it. [Emphasis added.]

The trial court thus concluded in its order granting defendant's motion for summary disposition that "Plaintiffs do not have standing to request grandparent visitation for the reason that the Plaintiff's son, the biological father of the minor children, had his parental rights terminated on February 4, 2010."

## II. STANDARD OF REVIEW

As the majority correctly notes, we review de novo questions of law regarding standing, *Manuel v Gill*, 481 Mich 637, 642; 753 NW2d 48 (2008), as well as summary disposition determinations, *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). We also review de novo questions of statutory interpretation. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013). The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). The touchstone of legislative intent is the statute's language. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. *In re Receivership of 11910 South Francis Rd*, 492 Mich 208, 222; 821 NW2d 503 (2012). An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a term of art with a unique legal meaning. MCL 8.3a; *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008).

## III. THE CHILD CUSTODY ACT GENERALLY

The Child Custody Act states, in pertinent part, as follows:

> A child's grandparent may seek a grandparenting time order under 1 or more of the following circumstances:

* * *

(c) The child's parent who is a child of the grandparents is deceased."[1] [MCL 722.27b(1)(c).]

Before delving into the meaning of this statutory provision, I note that the overriding concern of the Child Custody Act is the best interests of the affected children. MCL 722.25(1); *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004). Consequently, the act provides (a) a presumption "that a fit parent's decision to deny grandparenting time does not create a substantial risk of harm to the child's mental, physical, or emotional health"; (b) an opportunity for a petitioning grandparent to "overcome the presumption"; and (c) for the trial court then to "consider whether it is in the best interests of the child to enter an order for grandparenting time" pursuant to a number of factors that the court is obliged at that juncture to consider. MCL 722.27b(4)(b), and (6).[2]

In this case, the trial court did not reach those issues, and specifically did "not mak[e] any determination on these grandparents."[3] Instead, the trial court's determination was premised on a lack of "standing," i.e., a

---

[1] Subdivision (b) of subsection (1) also is arguably implicated here, because it allows a grandparent to seek grandparenting time where "[t]he child's parents are divorced," MCL 722.27b(1)(b), and defendant and Russell were divorced shortly before Russell's death. However, presumably because of Russell's intervening death, that statutory section is not before us on this appeal.

[2] The Legislature adopted these presumptions and standards as an amendment of the Child Custody Act, see 1970 PA 91 as amended by 2004 PA 542, effective January 3, 2005, to address the constitutional infirmities of the previous version of Michigan's grandparent-visitation statute, as found by our Supreme Court in *DeRose v DeRose*, 469 Mich 320, 335; 666 NW2d 636 (2003), citing *Troxel v Granville*, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000).

[3] The trial court in fact noted that plaintiffs "appear to be fine people," and it expressed regret over its denial of plaintiffs' request for grandparenting time and hope that this Court would reverse that decision.

preliminary determination that the Child Custody Act did not permit plaintiffs to seek grandparenting time because Russell's parental rights had been terminated.

#### IV. STANDING GENERALLY

Our Supreme Court has stated that

> [t]he purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to "ensure sincere and vigorous advocacy." Thus, the standing inquiry focuses on whether a litigant "is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." [*Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (citations omitted).]

A prospective plaintiff lacks standing if he or she is not a real party in interest, because the "standing doctrine recognizes that litigation should be begun only by a party having an interest that will assure sincere and vigorous advocacy." *City of Kalamazoo v Richland Twp*, 221 Mich App 531, 534; 562 NW2d 237 (1997), citing *Mich Nat'l Bank v Mudgett*, 178 Mich App 677, 679; 444 NW2d 534 (1989). A real party in interest is the one who is vested with the right of action on a given claim. *Kalamazoo*, 221 Mich App at 534, citing *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 96; 535 NW2d 529 (1995). " 'Standing does not address the ultimate merits of the substantive claims of the parties.' " *Lansing Sch Ed Ass'n*, 487 Mich at 357, quoting *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 633; 537 NW2d 436 (1995).

According to our Supreme Court, a plaintiff has standing "whenever there is a legal cause of action." *Lansing Sch Ed Ass'n*, 487 Mich at 372. "Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has stand-

ing." *Id.* Standing may be found if "the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Id.*

As I hereinafter discuss in part V of this opinion, I would hold that the Legislature's use of the phrase "natural parent" and its affording to a grandparent a right to seek grandparenting time independent of parental rights and notwithstanding parental desires, along with the overarching concern for the best interest of children that guides our interpretation of the Child Custody Act, indicate both that plaintiffs have a special right or substantial interest in this case and that the statutory scheme at least *implies* that the Legislature intended to confer standing on plaintiffs. *Id.*

### V. STATUTORY INTERPRETATION

As noted, the Child Custody Act permits a child's "grandparent" to seek grandparenting time when the child's "parent" who is a child of the grandparent is deceased. MCL 722.27b(1)(c). We must interpret the statutory language in accordance with the definitions that are supplied by the act itself. *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). MCL 722.22 provides the following pertinent definitions:

As used in this act:

\* \* \*

(e) "Grandparent" means a natural or adoptive parent of a child's natural or adoptive parent.

\* \* \*

(h) "Parent" means the natural or adoptive parent of a child.

Applying these definitions to MCL 722.27b(1), the Child Custody Act permits a "natural parent" of a "natural parent" to seek grandparenting time. There is no dispute here that plaintiffs were the "natural parents" of Russell. The only question before us, therefore, is whether Russell was a "natural parent" of the minor children.

The Child Custody Act does not, however, define the term "natural parent." Plaintiffs contend that this Court should interpret the term "natural parent," as used in the Child Custody Act, as the equivalent of "biological parent." Indeed, the legal and ordinary definitions of the word "natural" do imply a physical link. *Random House Webster's College Dictionary* (1997) defines "natural," in relevant part, as being "related by blood rather than by adoption." Similarly, Black's Law Dictionary (9th ed) defines "natural," in part, as "[o]f or relating to birth," as in a "natural child as distinguished from [an] adopted child."

In affirming the trial court (notwithstanding the trial court's stated preference to be reversed), however, the majority does not really answer the question before us, i.e., whether Russell was a "natural parent" of the minor children. Instead, the majority notes that at the time of his death, Russell was no longer a "legal parent" of the children. But "natural parent" and "legal parent" are obviously two very different terms, carrying distinct meanings.

In essentially equating the two, the majority finds "instructive" this Court's recent decision in *People v Wambar*, 300 Mich App 121; 831 NW2d 891 (2013). In *Wambar*, the question was whether a person whose parental rights to a child had been terminated could be

convicted of unlawfully taking the child under the general child-taking statute, MCL 750.350, or whether the person should have been charged under the parental-kidnapping statute, MCL 750.350a (which carries lesser penalties). As the majority notes, this Court in *Wambar* indeed concluded, in the context of that criminal statutory scheme, that the term "natural parent" "is not automatically equivalent" to the term "biological parent." The rationale for that conclusion in *Wambar* is, however, important. In *Wambar*, this Court stated that "[i]t would be anomalous for the Legislature to authorize a court to terminate a person's parental rights but to protect that same person if he or she attempted to take the child away from a person with legal rights to the child." *Wambar*, 300 Mich App at 126. Hence the majority in the instant case concludes:

> Similarly, with respect to the present case, it would be anomalous for the Legislature to authorize a court to terminate a person's parental rights on the basis of abuse but then to somehow "revive" those rights for purposes of grandparent visitation. Accordingly, for purposes of the present case, Russell was not a legal parent, plaintiffs are not legal grandparents, and they have no basis on which to seek an order of grandparenting time.

With due respect to the majority, I do not believe that its conclusion follows. The considerations that were present in *Wambar* simply are not present here. Because Russell is deceased, there is no potential here for him to receive a benefit or any "protection" from interpreting the term "natural parent" according to its plain and ordinary meaning. Nor would an interpretation of the term "natural parent" according to its plain and ordinary meaning in any way "revive" Russell's parental rights, as the majority suggests.

What I find "anomalous," in fact, is that the majority declines to equate "natural parent" with "biological

parent" in this context, yet equates "natural parent" with "legal parent" as its basis for affirming. I find the former equation of terms much more compelling and supportable than the latter, particularly given the plain and ordinary meaning of the terms.[4] In fact, in using the phrase "natural or adoptive parent" to define the terms "parent" and "grandparent," the Child Custody Act specifically juxtaposes the adjective "natural" with the complementary adjective "adoptive." MCL 722.22. An "adoptive parent" is a form of "legal parent." *Id.*; see *Theodore v Packing Materials, Inc*, 396 Mich 152, 162-163; 240 NW2d 255 (1976) ("The legal relationship between parents and their natural children is effectively terminated when the children are legally adopted by others. All rights and obligations between the child and parents are severed and the adoptive parents become the legal parents in all respects."). Consequently, the majority's equation of the term "natural parent" with the term "legal parent" in the context of grandparenting time, notwithstanding the Legislature's juxtaposition of "natural" with "adoptive," would impermissibly render the two terms surplusage. *Apsey v Mem Hosp*, 477 Mich 120, 127; 730 NW2d 695 (2007). "Natural parent" must connote something more and different than simply having "legal" parental rights.

My conclusion also finds support in the language of our Supreme Court. In *Hunter v Hunter*, 484 Mich 247; 771 NW2d 694 (2009), the Court found that "a parent whose rights have been terminated . . . cannot initiate an action for custody under the [Child Custody Act] because it would amount to a collateral attack on the

---

[4] I find irrelevant the questions whether Russell continued to have support obligations after the termination of his parental rights or the children were eligible for Social Security benefits through him. Those factors relate to Russell's status as a "legal parent," not to his status as a "natural parent."

earlier proceedings." *Id.* at 277. In so finding, the Court observed that a "termination order, by its nature, finds that custody with the *natural parent* is not in the child's best interests. A *parent's* only recourse in such cases is to appeal the order." *Id.* (emphasis added). In other words, a person whose parental rights have been terminated, and who has therefore lost his or her rights as a "legal parent," remains a "natural parent" and, therefore, a "parent," under the definition of the Child Custody Act.

I also do not agree with the majority's assertion that "[p]laintiffs, as Russell's parents, derived their rights as grandparents through him" and, therefore, that Russell's loss of his parental rights automatically also deprived plaintiffs of their grandparent rights. Certainly, the former proposition is true at some level. That is, if the grandparents' child were not the parent of a minor child, then the grandparents also would not be the grandparents of that minor child. However, the Child Custody Act is premised on the recognition that, at least in some circumstances, a grandparent's right to grandparenting time arises independently of parental rights and notwithstanding parental desires. Otherwise, there would be no reason to statutorily provide grandparents with a right to seek grandparenting time. The majority implicitly recognizes this, inasmuch as it "acknowledge[s] that the second sentence of MCL 722.27b(5) appears to lend support to plaintiffs' argument in that it mentions a situation in which a grandparent seeks to visit a child even though the child's parent has had his or her parental rights terminated." That statutory subsection provides:

> If 2 fit parents sign an affidavit stating that they both oppose an order for grandparenting time, the court shall dismiss a complaint or motion seeking an order for grandparenting time filed under subsection (3). *This subsection*

*does not apply if* 1 of the fit parents is a stepparent who adopted a child under the Michigan adoption code, chapter X of the probate code of 1939, 1939 PA 288, MCL 710.21 to 710.70, and *the grandparent seeking the order is the natural or adoptive parent of a parent* of the child who is deceased or *whose parental rights have been terminated.* [Emphasis added.]

While, as the majority notes, the circumstances of a stepparent adoption are not present here, this statute nonetheless undercuts the majority's preferred statutory interpretation. By its very terms, this statutory provision recognizes the Legislature's intent that a "grandparent" seeking grandparenting time may be a "natural or adoptive parent" of a "parent ... whose parental rights have been terminated." In other words, even though a person's parental rights have been terminated, he or she may still be a "parent" for purposes of enabling a grandparent to seek grandparenting time.[5]

---

[5] Although my conclusion rests on interpretation of Michigan law, I note that other jurisdictions have recognized grandparents' standing to seek visitation under similar circumstances. For example, the Pennsylvania Superior Court has found that the parents of a biological father whose rights were terminated had standing to seek grandparent visitation. See *Rigler v Treen*, 442 Pa Super 533, 537-538; 660 A2d 111 (1995). Additionally, the New Mexico Court of Appeals has determined that New Mexico's statutory scheme "intended that the trial court, upon a showing that such visitation was in the best interests of the child, could authorize grandparent visitation even though [the grandmother's] son had relinquished his parental rights." *Lucero v Hart*, 120 NM 794, 798; 907 P2d 198 (NM App, 1995). The Indiana Court of Appeals has similarly found standing for grandparents to seek visitation notwithstanding the termination of a parent's parental rights. *In re Groleau*, 585 NE2d 726, 728 (Ind App, 1992). The Colorado Court of Appeals has stated that "[g]randparent visitation rights are derived from statute and are not contingent on the continuation of the parent-child legal relationship . . . ." *People in the Interest of N S*, 821 P2d 931, 932 (Colo App, 1991). Although each of these jurisdictions has its own complex statutory scheme for determining child custody and grandparents' rights, I find the basic reasoning of these

The majority therefore implores the Legislature to amend the statute, based on the majority's belief regarding what the Legislature "likely" intended. In my view, the majority thereby impermissibly "legislates" its own policy preference, notwithstanding the clear and unmistakable meaning of the actual words that the Legislature chose to employ. MCL 8.3a; *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002).

### VI. CONCLUSION

For these reasons, I respectfully dissent and would reverse the trial court's dismissal of plaintiffs' request for grandparenting time on grounds of standing. I express no opinion on the merits of plaintiffs' request, because those merits should first be evaluated by the trial court pursuant to the standards set forth in the Child Custody Act.[6]

---

cases persuasive in light of our own statutory scheme. See *Holland v Trinity Health Care Corp*, 287 Mich App 524, 529 n 2; 791 NW2d 724 (2010) ("Cases from other jurisdictions, although not binding, may be persuasive.").

[6] I note in passing that while defendant argues on appeal that the Child Custody Act, at least insofar as it relates to grandparenting time, should be "strictly construed," the Child Custody Act itself states that it should be "liberally construed . . . ." MCL 722.26(1). In any event, defendant's arguments in this respect go to the ultimate merits of plaintiffs' request for grandparenting time (which are not now before us), not to the preliminary issue of standing that is here presented on appeal.