# Court of Appeals, State of Michigan

## ORDER

Jarret T Geering v Elizabeth May King

Docket No. 335794

LC No. 11-008001-DM

Colleen A. O'Brien
Presiding Judge

Joel P. Hoekstra

Mark T. Boonstra
Judges

The Court orders that the June 13, 2017 opinion is hereby AMENDED to correct a clerical error. On page 6 of the opinion, the sentence in the last paragraph is amended to read: Accordingly, because the trial court's finding that Geering and King were unfit parents was against the great weight of the evidence, we reverse the circuit court's order granting Robinson's motion for grandparenting time and remand this matter for the entry of an order denying his motion.

In all other respects, the June 13, 2017 opinion remains unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUN 15 2017
_____
Date

_____
Chief Clerk

JARRET T. GEERING,

      Plaintiff-Appellant,

v

ELIZABETH MAY KING, formerly known as
ELIZABETH MAY GEERING and ELIZABETH
MAY ROBINSON,

      Defendant-Appellant,

and

MARTIN ROBINSON,

      Intervener-Appellee.

FOR PUBLICATION
June 13, 2017
9:05 a.m.

No. 335794
Kalamazoo Circuit Court
LC No. 2011-008001-DM

Before: O'BRIEN, P.J., and HOEKSTRA and BOONSTRA, JJ.

O'BRIEN, P.J.

Jarret T. Geering and Elizabeth May King (formerly known as Elizabeth May Geering and Elizabeth May Robinson) appeal as of right the circuit court's order granting Martin Robinson's motion for grandparenting time. We reverse and remand this matter for the entry of an order denying the motion for grandparenting time.

Jarret T. Geering and Elizabeth May King began dating in approximately 2002, married on September 26, 2009, and have four children together. In 2011, however, the parties separated, Geering remained in Kalamazoo, King moved with the children to Bay City, and, on December 15, 2011, Geering filed a complaint for divorce. In his complaint, Geering sought, in relevant part, joint legal and joint physical custody of their four children. From the filing of the complaint until June 2016, approximately four and a half years later, contentious custody proceedings between the parents ensued. In an order dated February 8, 2012, primary parenting time was awarded to King, but Geering was awarded two overnight visits during the first weekend of each month, five weeks of parenting time during the summer, and relatively equal holiday parenting time. Approximately four months later, on June 25, 2012, the trial court entered a parenting-time order modifying its February 8, 2012 order, this time awarding Geering primary parenting time and King supervised parenting time in light of allegations against King regarding her failure to adequately attend to one of the children's fractured ankle and bacterial

infection. It appears that Geering also reported his concerns to Child Protective Services (CPS), but the resulting neglect case was ultimately dismissed by stipulation.

On May 28, 2013, the trial court entered a "Final Decision as to Issues of Custody and Parenting Time." According to that decision, the parties were awarded joint legal and joint physical custody. With respect to parenting time during the school year, the trial court concluded that King would "be allowed to have the children once a month in Bay City on the first full weekend of every month, and [would] be allowed to visit them on any two other weekends in Kalamazoo for one overnight during the month as long as there is one week's notice to the father . . . ." With respect to parenting time during the summer and on holidays, the decision provided that "[t]he parents shall share alternating weeks in the summer" and relatively equal parenting time for holidays. Additionally, the order also provided that, in the event King "move[d] back to the Kalamazoo area permanently," "the mother and father shall share parenting time with the minor children on a 50/50 basis." The parties divorce was finalized on June 23, 2013, and the judgment of divorce provided for joint legal custody as well as that physical custody and parenting time would be addressed in "a separate order[.]" Nevertheless, the parties contentious custody disputes did not come to an end upon the entry of the judgment of divorce.

Instead, they grew more complicated, and it is the complications that arose after the judgment of divorce was entered that resulted in the instant appeal. Specifically, the issues before this Court on appeal focus on claims made by Martin Robinson, King's father and the children's grandfather, and his wife, Shaney Robinson, King's stepmother and the children's stepgrandmother, that they were being excluded from the children's lives. These claims resulted in Robinson and his wife filing a successful motion to intervene on November 25, 2013. Then, on the following day, Robinson and his wife filed a motion for grandparenting time, claiming that Geering had "abruptly terminated" their relationships with the children and requesting grandparenting time "[e]very Monday from the end of the school day until the end of their Religious Education Class," "[t]he first full weekend of every month," "[f]our weeks during the summer, to include July 4," and "contact . . . via telephone, Skype and mail, especially on Holidays and Birthdays" as well as "such other and such further relief as may be equitable and in good conscience." However, an order permitting Robinson and his wife to withdraw that motion was entered approximately four months later, on March 3, 2014, and, according to King, she had asked Robinson to withdraw the motion because it added yet another dispute to the already-contentious custody proceedings.

Apparently, Robinson and his wife remained unhappy with their level of involvement in the children's lives over the next year or so. Consequently, on February 17, 2015, Robinson, alone this time, filed a second motion for grandparenting time. In his motion, Robinson asserted that Geering and King were only allowing him and his wife to spend time with the children "on a sporadic basis" and only "during their mother's parenting time." Explaining that he had only been able to see all or some of the children 13 times between February 2014 and November 2014, Robinson asserted that the parents' decision to "cut him off cold" would have a "devastatingly negative impact on [the children] mentally and emotionally." As he and his wife had requested before, Robinson again requested grandparenting time "[e]very Monday from the end of the school day until the end of their Religious Education Class," "[t]he first full weekend of every month," "[f]our weeks during the summer, to include July 4," and "contact . . . via telephone, Skype and mail, especially on Holidays and Birthdays" as well as "such other and

such further relief as may be equitable and in good conscience." In response to Robinson's motion, Geering and King, who had largely disagreed on all custody-related issues to that point during the proceedings, filed a *joint* affidavit opposing Robinson's motion. In it, they indicated, in relevant part, "[t]hat both of the affiants are fit parents and both parents of the . . . minor children herewith oppose the Motion for Grandparenting Time as not being within the best interests of the minor children."

After holding three day-long hearings over the course of the next 21 months, the trial court granted Robinson's motion, concluding, in relevant part, that Geering and King were unfit parents and that grandparenting time with Robinson was in the children's best interests. In finding that Geering and King were unfit parents, the trial court explained that due to their "inconsistency [in] discipline, the inconsistency in communication, the inconsistency in co-parenting, [and] not fostering the relationship with the other parent," the parents "created a substantial risk of harm to all four of [their] children's mental, physical, emotional health." Consequently, the circuit court entered an order allowing Robinson regular grandparenting time that could include his wife at his discretion. Specifically, the trial court ordered that the children spend one weekend each month during the school year and one week during the summer with Robinson and/or his wife. A written order reflecting the circuit court's decision was entered on November 14, 2016. Geering and King appeal as of right that order, arguing, in part, that the circuit court's order granting Robinson's motion for grandparenting time should be reversed because the circuit court erroneously concluded that they were unfit parents. We agree.

This Court recently summarized the applicable law in situations where a parent challenges a circuit court's decision to grant a grandparent's motion for grandparenting time in *Zawilanski v Marshall*, 317 Mich App 43, 48-50; ___ NW2d ___ (2016), stating, in relevant part, as follows:

> "Orders concerning [grand]parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Keenan v Dawson*, 275 Mich App 671, 679; 739 NW2d 681 (2007) (quotation marks and citation omitted). The Court should affirm a trial court's findings of fact unless the evidence "clearly preponderate[s] in the opposite direction." *Fletcher v Fletcher*, 447 Mich 871, 879; 526 NW2d 889 (1994) (quotation marks and citation omitted; alteration in original). A trial court abuses its discretion on a custody matter when its "decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). We conclude that this standard should also apply to decisions about parenting and grandparenting time. A court commits clear legal error "when it incorrectly chooses, interprets, or applies the law." *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009).

> Parents have a constitutionally protected right to make decisions about the care, custody, and management of their children. *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). This right "is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical

-3-

welfare of the minor . . . ." *Id.* at 409-410, quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1971) (quotation marks and citation omitted). "The United States Constitution, however, recognizes 'a presumption that fit parents act in the best interest of their children' and that 'there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of [fit parents] to make the best decisions concerning the rearing of [their] children.' " *In re Sanders*, 495 Mich at 410, quoting *Troxel v Granville*, 530 US 57, 68-69; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (opinion by O'Connor, J.) (alterations in *Sanders*).

MCL 722.27b provides grandparents in certain situations the means to seek an order for grandparenting time. To protect parents' fundamental liberty to make decisions about the care, custody, and management of their children, MCL 722.27(4)(b) incorporates a rebuttable presumption "that a fit parent's decision to deny grandparenting time does not create a substantial risk of harm to the child's mental, physical, or emotional health." To rebut this presumption, a grandparent "must prove by a preponderance of the evidence that the parent's decision to deny grandparenting time creates a substantial risk of harm to the child's mental, physical, or emotional health." *Id.* If the grandparent does not rebut the presumption, the court must dismiss the grandparenting-time action. *Id.* However, if the grandparent meets the standard for rebutting the presumption,

> the court shall consider whether it is in the best interests of the child to enter an order for grandparenting time. If the court finds by a preponderance of the evidence that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or specific terms and conditions. [MCL 722.27b(6).]

In sum, MCL 722.27b(4) and (6) generally control in situations where a parent objects to a grandparent's motion for grandparenting time. This case, however, does not involve a situation where *a* parent objects to a grandparent's motion for grandparenting time. Rather, it involves a situation where *both* parents object to a grandparent's motion for grandparenting time. In such a situation, MCL 722.27b(5) controls. That statutory provision provides as follows:

> If 2 fit parents sign an affidavit stating that they both oppose an order for grandparenting time, the court shall dismiss a complaint or motion seeking an order for grandparenting time filed under subsection (3). This subsection does not apply if 1 of the fit parents is a stepparent who adopted a child under the Michigan adoption code, chapter X of the probate code of 1939, 1939 PA 288, MCL 710.21 to 710.70, and the grandparent seeking the order is the natural or adoptive parent of a parent of the child who is deceased or whose parental rights have been terminated.

Consequently, "if two fit parents (with the exception of certain circumstances that are not present in this case) both oppose visitation, their joint opposition effectively creates an irrebuttable

presumption that denial of grandparenting time will not create a substantial risk of harm to the child, and the grandparents' petition must be dismissed." *Brinkley v Brinkley*, 277 Mich App 23, 29; 742 NW2d 629 (2007).

In this case, Geering and King each signed affidavits stating, in relevant part, that, as fit parents, they opposed an order regarding grandparenting time. Therefore, it was and remains their position that the circuit court was required to dismiss Robinson's motion for grandparenting time pursuant to MCL 722.27b(5). Robinson, on the other hand, contends that the circuit court was not required to dismiss his motion because one or both parents were unfit. Consequently, the issue before this Court focuses on the interpretation and application of the term "fit" as used in MCL 722.27b. The Child Custody Act, MCL § 722.21 *et seq.*, including the definitions provision of that act, MCL 722.22, does not define the terms "fit" or "unfit" in this context. It also appears that neither this Court nor our Supreme Court have defined the term in this context. However, the United States Supreme Court, in *Troxel v Granville*, 530 US 57, 68; 120 S Ct 2054; 147 L Ed 2d 49 (2000), defined a "fit" parent as a parent who "adequately cares for his or her children[.]" It did so in the context of determining whether statutes allowing for third-party parenting time must afford deference to the children's parents. It held that they must. *Id*. at 68-69. That decision led this Court to declare a previous version of our state's grandparenting time statute unconstitutional, *DeRose v DeRose*, 469 Mich 320, 333-334; 666 NW2d 636 (2003), and it was the *Troxel* and *DeRose* decisions that ultimately led the Legislature to amend MCL 722.27b to its current form, *Brinkley*, 277 Mich App at 28-29. It is well established that the Legislature is presumed to act with knowledge of current judicial interpretations, *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991), and, "[w]hen statutory provisions are construed by the court and the Legislature reenacts the statute, it is assumed that the Legislature acquiesced to the judicial interpretation," *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 373; 781 NW2d 310 (2009). For these reasons, we choose to incorporate the definition of the term "fit" as set forth in *Troxel*—as a parent who "adequately cares for his or her children"—to MCL 722.27b.

Consequently, the issue before this Court is whether the circuit court's finding that Geering and King were unfit parents was against the great weight of the evidence. *Zawilanski*, 317 Mich App at 48. We conclude that it was. While we acknowledge that, like most, if not all, parents, Geering and King are not perfect, it is our view that the record before us simply does not support a conclusion that either parent failed to adequately care for his or her children. The circuit court's analysis largely focused on the parents' failure to resolve various parenting issues during the contentious proceedings that took place both before and after the parents' divorce. Specifically, the circuit court pointed to the parents' "inconsistency [in] discipline, the inconsistency in communication, the inconsistency in co-parenting, [and] not fostering the relationship with the other parent[.]" However, as the circuit court expressly acknowledged, the parents' relationship has significantly improved since they resolved the remaining custody and parenting-time issues while this motion was pending. Indeed, as the trial court recognized, the record reflects that there was "improvement between mom and dad," that "they [were] both starting to mature and get established," and "that the children are doing well academically and emotionally and . . . have witnessed their parents being respectful and pleasant for each other." It is this that led to the entry of a stipulated order in either late May or early June of 2016 determining the parties' custody and parenting time arrangements. Although it is true that, during the custody proceedings, the children struggled with changing households frequently, the

children had difficulty in adjusting to the different expectations between Geering's and King's households, and the parents failed to effectively communicate and resolve disagreements in those respects, the record also reflects that, generally speaking, those concerns are largely concerns of the past. Relatedly, it cannot be overlooked CPS conducted several investigations during the custody proceedings, most of which Geering believes were a result of Robinson's wife's reports, and none of the primary allegations were substantiated. In sum, we do not believe that the record before us supports a conclusion that Geering or King failed to adequately care for their children, and the circuit court's conclusion to the contrary clearly preponderated in the opposite direction. *Id*.

Our conclusion does not necessarily mean that we agree with Geering's and King's purported decision to largely exclude Robinson and his wife from the children's lives. Indeed, it is very apparent from the record that the trial court did not agree with that decision. However, parents have a constitutionally protected right to raise their children as they see fit, *Zawilanski*, 317 Mich App at 48-50, and we cannot deprive them of this constitutionally protected right simply because we, as bystanders who are not intimately involved in the parents' or the children's lives, do not agree with a decision made by the parents. It may well be that the parents' decision to alter the relationship that the children, Robinson, and his wife shared negatively impacted the children, but that is not the inquiry, and it is simply not the judiciary's role to make such a decision for two otherwise fit parents. Indeed, it appears that King may be willing to allow Robinson to spend time with the children, and it is certainly possible that, eventually, both parents might even be willing to allow Robinson and his wife to spend time with the children as well. However, our review of the record reflects that such a decision should be made by Geering and King, two fit parents, not this Court or the circuit court. Accordingly, because the trial court's finding that Geering and King were unfit parents was against the great weight of the evidence, we reverse the circuit court's order granting Robinson's motion for grandparenting time and remand this matter for the. In light of this conclusion, we need not address the remainder of Geering and King's arguments raised on appeal.

Reversed and remanded. We do not retain jurisdiction. Appellants, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Joel P. Hoekstra
/s/ Mark T. Boonstra